■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL C. CURKENDALL, Appellant. [783 NYS2d 707]—

Carpinello, J. Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered March 30, 2001, upon a verdict convicting defendant of the crimes of manslaughter in the second degree, vehicular manslaughter in the second degree, driving while intoxicated (two counts), leaving the scene of an incident without reporting, assault in the third degree and reckless endangerment in the second degree (two counts).

Defendant stands convicted of manslaughter in the second degree, vehicular manslaughter in the second degree, two counts of driving while intoxicated, leaving the scene of an incident without reporting, assault in the third degree and two counts of reckless endangerment in the second degree following a two-car collision that resulted in the death of Jane Briggs (hereinafter decedent) and injuries to her two young grandchildren. Sentenced to various concurrent determinate and indeterminate sentences, the longest of which was 5 to 15 years in prison, defendant appeals. Finding no merit to any of his contentions, we now affirm.

Defendant attacks both the legal sufficiency and the weight of the evidence supporting each of his convictions. Viewing the evidence at trial in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish defendant's guilt on all eight counts beyond a reasonable doubt. Likewise, upon the exercise of our factual review power, we are satisfied that the verdict on all counts was not against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). The evidence adduced at trial established the following.

Shortly after 6:00 P.M. on August 17, 2000, decedent was traveling south on East Franklin Street in the Town of Horseheads, Chemung County, with her two young grandchildren. Defendant, who had just left a local tavern having consumed alcohol for the third time that day, was traveling northbound on the same road. According to the operator of a vehicle directly behind defendant, defendant was repeatedly swerving between the opposite lane of traffic and the shoulder of his own side of the road. After narrowly avoiding a collision with the southbound vehicle traveling ahead of decedent, defendant once again swerved into the opposite lane of traffic and

collided with decedent's van. According to this witness, decedent attempted to avoid the collision, to no avail. Defendant, on the other hand, never applied his brakes, slowed down or attempted to avoid decedent's vehicle at any time.

As a result of the impact, decedent suffered from severe injuries, including two fractured femurs and an open arm fracture. She ultimately died on August 31, 2000.[1] Decedent's grandchildren suffered much less severe injuries. Her five-year-old granddaughter was treated and released from a local hospital the night of the accident and her three-year-old grandson was treated and released the following day.[2]

Immediately after the accident, defendant exited his pickup truck, inspected his vehicle and then proceeded into an adjacent field. Several witnesses verified that when defendant left the scene, screams could be heard from decedent's vehicle. At about 6:40 P.M., a Chemung County sheriff's deputy found defendant crouched down in the field about 300 yards from the collision. When this deputy directed defendant to "stop," he instead stood up, ran two or three steps in the opposite direction and fell. It then took two deputies to assist defendant off the ground and out of the field. According to both deputies' testimony, defendant was staggering, his speech was impaired, his eyes were red and glassy and he had a strong odor of alcohol. Moreover, the only injuries they observed were small abrasions on his left

---

1. Defendant challenges his manslaughter in the second degree (see Penal Law § 125.15 [1]) and vehicular manslaughter in the second degree (see Penal Law § 125.12 [1], [2]) convictions by arguing that decedent's death was solely attributable to an intervening cause, namely, a hospital-acquired infection. The precise cause of decedent's death was hotly contested at trial. The People submitted expert proof that the ultimate cause of decedent's death was the trauma and multiple injuries to her body from the accident. Defendant submitted expert proof that decedent's death was attributable solely to a hospital-acquired streptococcal infection that she was unable to overcome due to undiagnosed, preexisting liver and kidney diseases. In the end, the jury credited the testimony of the People's expert witnesses and we will not disturb this credibility determination (see People v Duffy, 185 AD2d 528, 529 [1992], lv denied 80 NY2d 903 [1992]).

2. The injuries to decedent's grandson formed the basis of the assault in the third degree conviction (see Penal Law § 120.00 [2]). Contrary to defendant's contentions, there was sufficient evidence to establish that he suffered from a physical injury within Penal Law § 10.00 (9), even though the toddler himself did not testify. It was established through the testimony of his mother and an emergency medical technician at the scene of the accident that decedent's grandson suffered from a cut on his jaw, a large, cone-shaped contusion on his forehead and bruising underneath his eyes. According to his mother, the toddler was in a lot of pain for several weeks following the accident and needed constant pain medication. As of the trial in this matter, small bumps still remained on both his jaw and forehead and the child continued to complain of pain.

elbow and left cheek. Although defendant would not respond to repeated requests for his name, he did inquire about the condition of the occupants of the other vehicle as he was being led out of the field. He further expressed to these deputies that he was "so embarrassed" and just wanted to "leave."

The testimony of other medical and police personnel at the scene similarly established that defendant exhibited classic signs of intoxication immediately following the accident, namely, impaired speech, red and glassy eyes and a strong odor of alcohol on his breath. These witnesses further established that defendant did not appear to suffer from any serious injury, did not complain of any serious injury and refused medical treatment and/or transportation to a hospital for evaluation. These witnesses also established that defendant stated that he was embarrassed, that he "really [messed] up" and that he "was going away for a long time."

The jury also heard that defendant failed two sets of field sobriety tests, one that was performed at the scene at approximately 7:05 P.M. and another that was performed at the sheriff's department at approximately 7:52 P.M. The second set of tests was videotaped and played to the jury. A breathalyzer performed at 8:13 P.M. revealed a blood alcohol content of 0.21%, which was twice the then legal limit. To this end, the People further put forth evidence, including expert testimony, that the breathlyzer machine utilized in this case was working properly and produced reliable results.

The defense to the charges in this case was multifaceted. In addition to contesting the cause of decedent's death (see n 1, supra) and extent of her grandson's injuries (see n 2, supra), defendant argued, and presented evidence, that the breathalyzer utilized on him was "compromised and unreliable," his blood alcohol content could not have exceeded the legal limit because he only drank six beers within a six-hour period that day, his erratic driving was attributable to poor sleep habits and drowsiness, and his behavior after the accident, including leaving the scene, was attributable to a head injury sustained in the accident and not intoxication. Indeed, defendant presented proof that certain people who came in close contact with him throughout the day did not notice any signs of intoxication and relatedly argued that his performance on the videotape is inconsistent with an individual with a blood alcohol content of 0.21%. The jury heard all of defendant's proof on these issues and obviously disregarded it, as was its province. In sum, the jury was entitled to credit the People's evidence on all disputed issues and such evidence established defendant's guilt on all counts

(*see e.g. People v Smith*, 288 AD2d 629 [2001], *lv denied* 97 NY2d 733 [2002]; *People v Finkle*, 262 AD2d 971 [1999], *appeal dismissed* 94 NY2d 942 [2000]; *People v Carkner*, 213 AD2d 735 [1995], *lv denied* 85 NY2d 970 [1995]; *People v Duffy*, 185 AD2d 528 [1992], *lv denied* 80 NY2d 903 [1992]).

We find no merit in defendant's contention that he was denied a fair trial by the County Judge's refusal to recuse himself from the case because he had prosecuted defendant 14 years earlier on a similar offense when he was the District Attorney. Disqualification under these circumstances was not mandated (*see People v Jones*, 143 AD2d 465, 467 [1988]; *see generally People v Rosato*, 193 AD2d 1052 [1993], *lv denied* 84 NY2d 910 [1994]; *People v Jabaut*, 188 AD2d 1082 [1992]). Other than noting the Judge's recollection of the prior incident, defendant points to no specific act or comment during the trial evincing any bias against him. Moreover, our independent review of the record discloses none. In fact, we are compelled to point out that midway during the trial, during an evidentiary colloquy outside the presence of the jury, defense counsel himself stated on the record that he was "very pleased with the Court's performance" thus far (*cf. People v Tartaglia*, 35 NY2d 918 [1974]). In short, "[n]o bias, prejudice or unworthy motive affecting [defendant's trial] was shown, and thus there is nothing in the record to support a claim of disqualification" (*People v Jones, supra* at 467; *see generally People v Rosato, supra*; *People v Jabaut, supra*).

Defendant next claims that the results of his breathalyzer should have been suppressed because his right to counsel was violated. This argument was not raised before County Court and thus the issue is unpreserved for this Court's review (*see* CPL 470.05 [2]; *see also People v Vinogradov*, 294 AD2d 708, 709 [2002]; *People v Peabody*, 206 AD2d 754, 755 [1994]). In any event, even if this Court were to review it, we would conclude that it lacks merit.

While an individual has the right to consult with an attorney in deciding whether to submit to a sobriety test (*see People v Shaw*, 72 NY2d 1032, 1033-1034 [1988]; *People v Gursey*, 22 NY2d 224, 228 [1968]), it is only a qualified right to counsel, not a constitutional one (*see People v Hager*, 69 NY2d 141, 142 [1987]; *People v Shaw, supra* at 1033-1034). Moreover, the request must be specific (*see People v Vinogradov, supra* at 708; *People v Hart*, 191 AD2d 991, 992 [1993], *lv denied* 81 NY2d 1014 [1993]). Here, upon being apprised of the consequences of a refusal (*see* Vehicle and Traffic Law § 1194), defendant unequivocally *agreed* to submit to a chemical test, both at the

scene of the accident and again at the sheriff's department. To be sure, upon being read his *Miranda* rights, defendant did generally request an attorney and was not provided with one at that time.[3] Notwithstanding his invocation of the right to counsel under *Miranda*, defendant remained willing to take the chemical test and never made a specific request for an attorney vis-à-vis this decision (*cf. People v Gursey, supra; People v DePonceau*, 275 AD2d 994 [2000], *lv denied* 95 NY2d 962 [2000]; *People v Kearney*, 261 AD2d 638 [1999], *lv denied* 93 NY2d 1020 [1999]). Thus, any motion to suppress the results of the chemical test after he consented to submit to it, even in the absence of an attorney, would have been unsuccessful (*see People v Vinogradov, supra; People v Kearney, supra; People v DePonceau, supra*).

We have reviewed defendant's remaining contentions, including his claims that he received ineffective assistance of counsel and his sentence is harsh and excessive, and reject them as being without merit.

Cardona, P.J., Mercure, Crew III and Spain, JJ., concur. Ordered that the judgment is affirmed.

---

3. Defense counsel did not seek to suppress the videotape at trial (although he successfully sought to have it redacted so the jury did not hear that defendant had a prior driving while intoxicated conviction). This was apparently a tactical decision on the part of counsel, reasonable in our view, so as to permit the jury to observe defendant perform the tests and make a judgment about his level of intoxication.