[964 NYS2d 176]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JONAI
WASHINGTON, Respondent.

Second Department, April 17, 2013

## APPEARANCES OF COUNSEL

*Kathleen M. Rice, District Attorney*, Mineola (*Tammy J. Smiley* and *Yael V. Levy* of counsel), for appellant.

*Frederick K. Brewington*, Hempstead (*Valerie Cartright* of counsel), for respondent.

## OPINION OF THE COURT

LEVENTHAL, J.

This case calls upon us to address a matter of first impression involving the right to counsel under the New York Constitution (*see* NY Const, art I, § 6), where the defendant consented to a chemical breath test to determine her blood alcohol content (hereinafter BAC), but, prior to the commencement of the test, the police made no effort to inform the defendant that her attorney had appeared in the matter. For the reasons which follow, we hold that where, as here, the police are aware that an attorney has appeared in a case before the chemical breath test begins, they must make reasonable efforts to inform the motorist of counsel's appearance if such notification will not substantially interfere with the timely administration of the test. Since the People failed to establish that notifying the defendant of her attorney's appearance would, in fact, have interfered with the

timely administration of the chemical breath test, we conclude that the Supreme Court properly granted that branch of her omnibus motion which was to suppress the results of that test.

Following a collision between the defendant's vehicle and a pedestrian in Nassau County, the defendant was charged with manslaughter in the second degree (see Penal Law § 125.15 [1]), vehicular manslaughter in the second degree (see Penal Law § 125.12 [1]), and two counts of operating a motor vehicle while under the influence of alcohol (see Vehicle and Traffic Law § 1192 [2], [3]).

At a suppression hearing, evidence was adduced demonstrating that, on August 30, 2010, at approximately 2:05 a.m., Nassau County Police Officers responded to the scene of a motor vehicle accident. At the scene, the officers observed the defendant standing beside the door of her vehicle crying and speaking on her cell phone. The defendant's vehicle had a dented hood and a crushed windshield. Between 50 to 70 feet away from the defendant's car lay an injured pedestrian. The pedestrian subsequently died from his injuries. The defendant appeared intoxicated and, after the officers conducted various field sobriety tests, they placed the defendant under arrest at 2:40 a.m. and transported her to the Central Testing Section at Nassau County police headquarters. When the defendant's family learned of the accident and her arrest, they immediately contacted an attorney and arranged for him to represent the defendant.

At police headquarters, the police requested that the defendant submit to a chemical breath test. The People submitted into evidence a consent form initialed by a police officer and signed by the defendant wherein the defendant agreed to submit to the chemical breath test at 3:30 a.m. The parties stipulated that at 3:39 a.m. the defendant's breath was drawn.

Anthony Mayol, the attorney retained by the defendant's family, testified on her behalf. According to telephone records submitted into evidence by the People, at 3:31 a.m. Mayol called and spoke to a police dispatcher at Nassau County police headquarters, and was transferred to "Detention" at 3:32 a.m. This telephone call lasted a total of nine minutes and two seconds. Mayol testified that during this phone call with Detention, he informed the police that he represented the defendant and stated, "You have to stop all questioning and we're not consenting to any form of testing whatsoever." Mayol's cell phone records show that he remained on the line with the police until

3:39 a.m., the time that the defendant's breath was drawn. Mayol testified that he was told that someone from the precinct would call him back.

The People did not offer any testimony from the police officer who spoke with Mayol during the initial phone call. According to the prosecutor, that individual had no recollection of the relevant facts.

At 4:33 a.m., after Mayol did not receive a return call from the police, he telephoned police headquarters a second time. According to Mayol, he asked to speak directly to the defendant, but he could not recall whether he made this request during the first or second call; he testified, "I almost want to say it was the first time, but I couldn't tell you for certain it was the first time. It was one of the two times that I definitely asked to speak to her." The police did not permit Mayol to speak with the defendant.

During the colloquy at the suppression hearing, the hearing court indicated that the "main cases" it was interested in were *People v Gursey* (22 NY2d 224 [1968]) and *People v Garofolo* (46 NY2d 592 [1979]). In response to an argument raised by the prosecutor that "it would [have been] impossible for anyone to run out and cut the test off, tell [the defendant] to stop providing a sample," the court stated that the People failed to adduce any testimony to establish that alleged fact. The court also stated that "[t]here was a denial of access to [sic] the lawyer to his client by the police department. That is proven beyond a reasonable doubt." In an order dated July 29, 2011, the hearing court granted that branch of the defendant's omnibus motion which was to suppress the results of the chemical breath test. The People appeal (*see* CPL 450.20, 450.50).[1]

On appeal, the People assert that the branch of the defendant's omnibus motion which was to suppress the results of the chemical breath test should have been denied because the defendant failed to invoke her limited right to counsel prior to consenting to the chemical breath test. The People argue that a defendant's attorney cannot direct that tests should not be administered unless the client confirms the directive. The

1. The People have filed a statement with this Court pursuant to CPL 450.50 asserting that the deprivation of the use of the suppressed evidence has rendered the sum of the proof available to the People with respect to *all* the charges in the indictment "so weak in its entirety that any reasonable possibility of prosecuting such charge to a conviction has been effectively destroyed."

People also contend that the defendant failed to establish that her counsel actually requested to speak with her when he called the police prior to the administration of the test. The People further argue that Mayol's 3:31 a.m. call was too late to stop the test, which was commenced at 3:39 a.m. when the defendant's breath was drawn.

"Chemical breath tests to determine blood alcohol content . . . are an important investigative tool used by law enforcement in the effort to combat driving while intoxicated and related offenses" (*People v Smith*, 18 NY3d 544, 548 [2012]). "Any person who operates a motor vehicle in this state shall be deemed to have given consent" to, among other things, a chemical breath test to determine the alcoholic content of their blood, within certain time limits after being arrested for driving under the influence of alcohol (Vehicle and Traffic Law § 1194 [2] [a]). Vehicle and Traffic Law § 1194 sets forth the standards governing the administration of chemical breath tests, and provides that if a motorist refuses a test the motorist's driver's license will be immediately suspended and thereafter revoked for one year. A motorist's failure to submit to a chemical test is admissible as evidence at trial (*see* Vehicle and Traffic Law § 1194 [2] [f]). "[T]o maximize the probative value of BAC evidence, the police endeavor to administer chemical tests as close in time as possible to the motor vehicle infraction, typically within two hours of an arrest" (*People v Smith*, 18 NY3d at 548).

Notably, a motorist does not have a constitutional right to refuse to consent to a chemical breath test (*see People v Smith*, 18 NY3d at 548; *People v Shaw*, 72 NY2d 1032 [1988]; *People v Thomas*, 46 NY2d 100, 108 [1978], *appeal dismissed* 444 US 891 [1979]). Moreover, the statutory right to refuse a test may be waived without an attorney's assistance (*see* Vehicle and Traffic Law § 1194 [2]; *People v Shaw*, 72 NY2d at 1033). Further, "Vehicle and Traffic Law § 1194 does not address whether a motorist has a right to consult with a lawyer prior to determining whether to consent to chemical testing" (*People v Smith*, 18 NY3d at 549). Nevertheless, if a motorist is arrested for driving while intoxicated, the Court of Appeals has recognized "a limited right to counsel associated with the criminal proceeding" (*id.*).

Possessing a "limited right to counsel" means that where a defendant is arrested for driving while under the influence of alcohol and asks to contact an attorney before responding to a request to take a chemical test, the police "may not, without

justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand" (*People v Gursey*, 22 NY2d 224, 227 [1968]). If such a request is made, and it is feasible for the police to allow a defendant to attempt to reach counsel without unduly delaying administration of the chemical test, a defendant should be afforded such an opportunity. The request to speak with an attorney must be specific; generalized requests for an attorney are insufficient to invoke the limited or qualified right (*see People v Curkendall*, 12 AD3d 710, 715 [2004]; *People v Hart*, 191 AD2d 991 [1993]; *cf. People v DePonceau*, 275 AD2d 994 [2000]). Furthermore, the right to consult with an attorney is not absolute. "If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel" (*People v Gursey*, 22 NY2d at 229; *see People v Smith*, 18 NY3d at 550). Where there has been a violation of the limited right to counsel recognized in *Gursey*, any resulting evidence may be suppressed at the subsequent criminal trial (*see People v Smith*, 18 NY3d at 550).

■ Applying these principles here, as the People correctly contend, there is no evidence in the record that the defendant personally requested to speak to an attorney prior to submitting to the breath test, and thus the limited right to counsel, first recognized in *Gursey,* was not triggered or violated (*cf. People v Mora-Hernandez*, 77 AD3d 531, 531 [2010] [suppressing results of breath test where "(p)olice ignored defendant's repeated requests for counsel prior to the administration of the test"]). The defendant concedes that she did not personally invoke the limited right to counsel by requesting to speak with counsel prior to the completion of the chemical breath test.

Turning from the limited right to counsel, we now consider whether, under the circumstances of this case, the defendant's state constitutional right to counsel attached prior to the administration of the chemical breath test. "New York has long viewed the right to counsel as a cherished and valuable protection that must be guarded with the utmost vigilance" (*People v Lopez*, 16 NY3d 375, 380 [2011]). "The indelible right to counsel arises from the provision of the State Constitution that guarantees due process of law, the right to effective assistance of counsel and the privilege against compulsory self-

incrimination" (*People v Grice*, 100 NY2d 318, 320 [2003]; *see* NY Const, art I, § 6; *People v Bing*, 76 NY2d 331, 338-339 [1990]; *People v Hobson*, 39 NY2d 479, 481 [1976]). The right to counsel attaches indelibly (1) upon the commencement of formal proceedings (*see People v Samuels*, 49 NY2d 218, 221 [1980]; *People v Settles*, 46 NY2d 154 [1978]), or (2) when a suspect in custody requests to speak to an attorney, or when an attorney who is retained to represent the suspect enters the matter under investigation (*see People v Cunningham*, 49 NY2d 203, 205 [1980]; *People v Rogers*, 48 NY2d 167 [1979]; *People v Hobson*, 39 NY2d 479 [1976]; *People v Arthur*, 22 NY2d 325 [1968]; *see also People v Grice*, 100 NY2d at 320-321 [discussing the right to counsel under the State Constitution]; *People v West*, 81 NY2d 370, 373-374 [1993]).

"[O]nce the police have been apprised that a lawyer has undertaken to represent a defendant in custody in connection with criminal charges under investigation, the person so held may not validly waive the assistance of counsel except in the presence of the lawyer" (*People v Garofolo*, 46 NY2d 592, 599 [1979]; *see People v Grice*, 100 NY2d at 320-321 [the right to counsel is indelible because once it attaches, interrogation is prohibited unless the right is waived in the presence of counsel]; *People v Arthur*, 22 NY2d 325, 329 [1968] ["once the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant" the indelible right to counsel attaches regardless of the lack of a formal retainer agreement]; *People v Gunner*, 15 NY2d 226, 231-232 [1965]; *People v Harris*, 93 AD3d 58, 66 [2012]).

For example, in *People v Garofolo* (46 NY2d 592 [1979]), the defendant, a suspect in a homicide, waived his right to remain silent and made inculpatory statements to the police. Before the defendant's statements had been reduced to writing, the defendant's counsel had made repeated efforts to locate and speak with his client (*see id.* at 600-601). Defense counsel's efforts to locate the defendant were unsuccessful because, at the time, there was "no central pool of information of persons in the custody of the police department" (*id.* at 598). It took almost two hours for counsel to ascertain the defendant's whereabouts; at that point the defendant had already provided the police with a written confession (*see id.* at 598).

The Court of Appeals in *Garofolo* held that the police were required "to establish and maintain procedures which will

insure that an attorney representing [a person in custody] may communicate with him and with the officials responsible for the investigation, without unreasonable delay'' (*id.* at 600, citing *People v Pinzon*, 44 NY2d 458, 464 [1978]). The Court held that inadequate police procedures to track a person in custody, which delay communication between an attorney and client, violate the right to counsel guaranteed under the Federal and State Constitutions (*see People v Garofolo*, 46 NY2d at 596, 599). Thus, *Garofolo* allows for the suppression of a defendant's statements made after counsel enters a case, even where the police make good faith efforts to locate the defendant who is in their custody but are unable to do so (*see id.* at 600-601).

Here, the evidence adduced at the suppression hearing demonstrates that the defendant was in custody once she was arrested and transported to the police precinct (*see People v Yukl*, 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970] [a suspect is deemed to be in custody when, a reasonable person, innocent of any crime, would not have believed she was free to leave the presence of the police]). Furthermore, the defendant's counsel appeared and actually entered the case at 3:31 a.m., when he informed the police that he represented the defendant. Thus, the defendant's indelible right to counsel attached at that point (*see People v Grice*, 100 NY2d at 324; *People v West*, 81 NY2d at 373-374), and any subsequent statements that the defendant may have made were rendered inadmissible at trial (*see People v Garofolo*, 46 NY2d at 599; *People v Pinzon*, 44 NY2d 458 [1978]). However, the evidence which the defendant sought to suppress was the result of the chemical breath test, not a statement.

The defendant advances the contention that once her attorney appeared in the case and instructed the police not to perform the chemical breath test, it was incumbent upon the People to inform her of counsel's instructions and to allow her to consult with counsel. The defendant argues that the People did not submit any evidence at the suppression hearing demonstrating that there was insufficient time to permit her to speak with counsel, and that this failure constituted a deprivation of her right to counsel.

The defendant's contentions are analogous to arguments considered by our courts in cases where individuals have sought to apply the rules relating to the state constitutional right to

counsel[2] to suppress the results of investigatory lineups (see e.g. People v Mitchell, 2 NY3d 272, 274-275 [2004] ["Once the right to counsel has been triggered, the police may not proceed with the lineup without at least apprising the defendant's lawyer of the situation and affording the lawyer a reasonable opportunity to appear"]; People v LaClere, 76 NY2d 670 [1990] [finding that the results of investigatory lineups should be suppressed where the lineups occurred after the defendants' right to counsel had attached and where the lineups were conducted without notice to counsel or a recognized excuse for counsel's absence]; People v Coates, 74 NY2d 244 [1989]; People v Hawkins, 55 NY2d 474 [1982]; People v Blake, 35 NY2d 331 [1974]). In those cases, the Court of Appeals has determined that suspects are not entitled to counsel at pre-accusatory, investigatory lineups, but once the right to counsel has attached, that right requires the police to notify defense counsel of an impending investigatory lineup and afford counsel a reasonable opportunity to attend (see People v LaClere, 76 NY2d at 672-673).

At an investigatory lineup, defense counsel's role is limited to being a passive observer; counsel may not actively participate in the procedure (see People v Hawkins, 55 NY2d at 485 [during an investigatory lineup, defense counsel plays the "relatively passive role of an observer"]). However, the role of defense counsel prior to the administration of a chemical breath test is not so passive. A defendant has a right to consult with counsel. Defense counsel serves as an advisor to a defendant as to whether a defendant ought to consent to the administration of such a test and the consequences of a consent or refusal.

The facts of this case can be contrasted with those confronted by the Appellate Division, Fourth Department, in People v Pfahler (179 AD2d 1062 [1992]) and by the Appellate Term, First Department, in People v Meytin (30 Misc 3d 128[A], 2010 NY Slip Op 52276[U] [2010]).

In Pfahler, the Fourth Department held that the defendant's limited or qualified right to counsel was not violated:

"When defendant's attorney called the hospital and was informed that defendant was about to have a

---

2. The courts of this state have, on several occasions, afforded criminal defendants greater protections of counsel under the State Constitution as compared to the rights afforded under the United States Constitution (see e.g. People v Hawkins, 55 NY2d 474, 483 [1982], cert denied 459 US 846 [1982]; People v Settles, 46 NY2d at 161).

blood test, *the attorney did not ask to speak to defendant and did not object to the blood test.* The uncontroverted hearing evidence establishes that *defendant was told that his counsel had called before he submitted to the test.* Inasmuch as defendant's only right in this context is the right to consult with counsel before deciding whether to submit to the test, there was no denial of defendant's right to counsel" (*People v Pfahler*, 179 AD2d at 1062 [emphasis added]).

Like the case at bar, defense counsel in *Pfahler* called and made contact with the police prior to the administration of a chemical breath test. However, *Pfahler* is distinguishable on two grounds: the attorney in that case did not object to the test and, critically, the *defendant was told that his attorney had called* before he willingly submitted to the test.

In *Meytin,* the defendant moved to suppress the results of an intoxilyzer test. The evidence adduced at the suppression hearing showed that, prior to administering the test, defense counsel stated that the defendant should not be "dealt with or questioned" (*People v Meytin,* 30 Misc 3d 128[A], 2010 NY Slip Op 52276[U], *1 [2010]). Thereafter, the police *informed the defendant* that an attorney had called the police and stated that he was the defendant's attorney. However, the defendant did not request to speak with his attorney about whether he should consent to the sobriety tests and, therefore, it was determined that the defendant waived any qualified right to counsel. The order denying suppression was affirmed. Here, unlike in *Meytin,* the record is clear that the police did not inform the defendant that her attorney had appeared. Hence, we do not know whether the defendant here would have withdrawn her consent after consulting with her attorney.

The sui generis nature of this case requires us to examine the gap between *Gursey* and *Garofolo.* To that end, we are asked to consider whether, as the defendant contends, the New York Constitution must be interpreted so as to obligate the police to: inform a motorist in custody that an attorney has appeared in the matter on his or her behalf; inform a motorist that an attorney has requested that the motorist not be subjected to chemical testing; or make efforts to allow counsel to consult with a motorist prior to the commencement of such a chemical test. In addressing these contentions, this Court must balance the defendant's state constitutional right to counsel against the

time-sensitive need to conduct the chemical breath test. "Our right to counsel jurisprudence has continuously evolved with the ultimate goal of 'achieving a balance between the competing interests of society in the protection of cherished individual rights, on the one hand, and in effective law enforcement and investigation of crime, on the other' " (*People v Grice*, 100 NY2d at 322-323, quoting *People v Waterman*, 9 NY2d 561, 564 [1961]).

It is well settled that when the police are aware that a suspect has counsel, the suspect's "right or access" to counsel cannot be deprived (*People v LaClere*, 76 NY2d at 674; *see People v Blake*, 35 NY2d at 338). The principles which underlie the indelible right to counsel—due process of law, the right to effective assistance of counsel, and the privilege against compulsory self-incrimination (*see* NY Const, art I, § 6; *People v Grice*, 100 NY2d at 320)—demand that the state constitutional right to counsel be interpreted so as to protect the rights of the defendant. Thus, we hold that when the police are aware that an attorney has appeared in a case where a motorist has consented to a chemical breath test, the police are obligated to exercise reasonable efforts to inform the motorist of counsel's appearance if such notification will not substantially interfere with the timely administration of the test.[3] While we decline the defendant's request to hold that the police must act as an intermediary for a motorist by relaying messages from an attorney to a client, safeguarding the right to counsel requires a reasonable effort to provide notification of counsel's appearance. Once a motorist is so notified, that individual is free to, among other things, request to speak with counsel, refuse a test, or retract a consent to submit to a test. Where there is no evidence that the police made any efforts to notify a motorist that counsel has appeared in the matter, we must presume that a motorist would have requested to speak with counsel and would have withdrawn her consent to submit to a chemical breath test.

Applying this standard to the facts at issue here, the evidence shows that during Mayol's initial phone call to the police precinct, he spoke to a police officer. This individual would have been expected to provide the hearing court with testimony as to the feasibility of informing the defendant, prior to the commencement of the chemical breath test, that her attorney had

---

**3.** Just as it is important to conduct an investigatory lineup as close in time to the relevant circumstance as possible (*see People v Hawkins*, 55 NY2d at 486), promptness is equally important to the police with respect to the administration of chemical breath tests (*see People v Smith*, 18 NY3d at 548).

appeared in the action. The witness could have testified, for example, that the defendant was nearby, or that it would have been difficult to reach the defendant when Mayol called, or that the chemical breath test had commenced and could not be halted. However, that individual did not testify and the People's failure to call that witness was crucial. As discussed below, due to the vagueness in their proof, the People failed to satisfy their burden of going forward to show the legality of the police conduct in the first instance (*see People v Berrios*, 28 NY2d 361, 367 [1971]).

■ The record demonstrates that at 3:31 a.m., Mayol notified the police over the telephone that he represented the defendant. This phone call was made prior to the commencement of the chemical breath test (i.e., when the defendant's breath was drawn at 3:39 a.m.). However, the record is barren as to whether the People made any efforts to inform the defendant that her counsel had appeared in the case. The defendant's right to counsel was compromised inasmuch as the People were aware that the defendant's counsel had called, but the People failed to adduce any evidence to show that it was not reasonable to notify the defendant that her attorney had appeared. Therefore, we hold that the People's failure to so notify the defendant mandates the suppression of the chemical breath test results, since that test was commenced after defense counsel appeared in the case.

In view of the People's failure to produce the appropriate witness at the hearing, we need not reach the issue of whether the police are required to interrupt an ongoing chemical breath test when a motorist's attorney has appeared in a matter.

We note that in cases such as this which involve death or serious physical injury to a person other than the driver, the police may obtain a court order compelling a chemical test of a driver who refuses to submit to a test (*see* Vehicle and Traffic Law § 1194 [3]; *see also People v Whelan*, 165 AD2d 313 [1991]). This option, however, does not warrant a different result in this case. Law enforcement's ability to compel the defendant to submit to a breath test will not sanction the deprivation of the defendant's right to counsel under the State Constitution. Stated differently, the mere fact that a motorist is alleged to have committed a more serious crime does not mean that such an individual is entitled to a lesser, or greater, right to counsel.

Our dissenting colleague posits that once a motorist has agreed to submit to a chemical breath test, that consent cannot

be withdrawn. The dissent equates a consent to undergo a chemical breath test with a waiver which essentially cannot be withdrawn once the proverbial horse is out of the barn. We disagree with the dissent's view. We see no reason why a motorist, in the circumstances of this case, cannot elect to withdraw a previously given consent to submit to a chemical breath test prior to its administration. Here, the chemical breath test had not yet been commenced before Mayol entered the case and, had the defendant been notified of counsel's appearance, she could have elected to withdraw her consent and deal with the consequences that flowed therefrom. The dissent's thesis would eliminate a motorist's right to counsel after a consent is initially given, but prior to the commencement of a chemical breath test. This would render counsel's appearance a nullity as well as prohibiting a motorist from retracting her consent prior to the commencement of a chemical test. Our learned dissenting colleague's analysis only survives scrutiny if a consent to a chemical test is irrevocable even prior to the commencement of such a test. We do not think that the law deems consents to be irrevocable prior to the actual commencement of the test.

Our dissenting colleague also notes that if this were a matter involving a defendant's uncounseled waiver of her privilege against self-incrimination, the evidence obtained from a defendant pursuant to a knowing waiver of that constitutional right, prior to counsel's entry in the matter, would not be subject to suppression (*see People v Garofolo*, 46 NY2d at 601-602). However, the evidence sought to be suppressed here is not the defendant's consent to submit to the test, which was given prior to counsel's appearance in the case, but rather the results of the chemical breath test which were obtained after counsel's appearance, and following the police's unexplained failure to notify the defendant of counsel's appearance.

We are cognizant that our holding here constitutes an extension of the principles set forth in *Pinzon* and *Garofolo* and their progeny insofar as we affirm the order granting suppression of the chemical breath test results on the ground that the defendant's state constitutional right to counsel was violated. Nevertheless, "[i]n this State, the right of a criminal defendant to interpose an attorney between himself and the sometimes awesome power of the sovereign has long been a cherished principle" (*People v Settles*, 46 NY2d at 160). Indeed, the " 'highest degree of [judicial] vigilance' is required to 'safeguard' " the state right to counsel (*People v Harris*, 77 NY2d 434, 439 [1991], quoting *People v Cunningham*, 49 NY2d 203, 207 [1980]).

Accordingly, the order is affirmed.

ANGIOLILLO, J.P. (dissenting). On August 30, 2010, at 3:30 a.m., the defendant signed a consent form in which she agreed to submit to a chemical breath test to determine her blood alcohol content (hereinafter BAC). Her consent was valid under applicable statutory provisions and case law. Every motorist arrested for driving while intoxicated is deemed to consent to a chemical test (*see* Vehicle and Traffic Law § 1194 [2] [a]; *People v Hall*, 61 NY2d 834, 835 [1984]), and any motorist may, without an attorney's assistance, effectively waive the qualified statutory right to refuse the test (*see People v Shaw*, 72 NY2d 1032, 1033 [1988]). After the defendant gave her valid consent, an attorney entered the case. The majority holds that the chemical breath test results must be suppressed because the police unreasonably failed to advise the defendant of her attorney's appearance so that she could, among other possibilities, reconsider her previous valid consent with the advice of counsel, retract that consent, and refuse to take the test. I do not agree with my colleagues that, under the circumstances presented here, the defendant's right to counsel under the New York State Constitution was violated. Therefore, I respectfully dissent.

The evidence at the suppression hearing established that the defendant was the driver of a car which allegedly struck and killed a pedestrian in the early morning hours of August 30, 2010. Nassau County Police Officers Marlon Sanders and Michael Schneider responded to the scene. At 2:40 a.m., after conducting various field sobriety tests, the police officers arrested the defendant for driving while intoxicated and transported her to the Central Testing Section of the Nassau County Police Department (hereinafter NCPD) headquarters. A consent form signed by the defendant established that, at 3:30 a.m., she agreed to submit to a chemical breath test to determine her BAC. The form was initialed by Police Officer Sanders, identified as the arresting officer, and signed by Police Officer Michael Dyckman, identified as the technician for the chemical breath test.

After the defendant had signed the consent form, an attorney employed by her family, Anthony Mayol, called the NCPD and initially spoke with a switchboard operator. A recording of that segment of the call, starting at 3:31 and 53 seconds and ending at 3:32 and 21 seconds, was entered into evidence. During the recorded segment, Mayol identified himself by name, stated that he was calling on behalf of his client who had been ar-

rested, and asked to speak to the arresting officer or detective; he did not give the name of his client, nor did he request to speak to her. The operator stated that she would transfer his call to "Detention." The recording ended there. Thus, the recording establishes that Mayol did not inform the police between 3:31:53 and 3:32:21 that the person he represented was the defendant. The time at which Mayol identified the defendant by name is not known, but at the earliest, it would have been sometime after 3:32:21, when the call was transferred to Detention. Telephone records of Mayol's mobile service provider indicate that Mayol remained on the line with the NCPD until 3:39 a.m., and he called a second time at 4:33 a.m. The parties stipulated that the defendant's breath was drawn at 3:39 a.m., which was the same minute that Mayol's first call to the NCPD ended. However, the exact times at which the chemical breath test was commenced and completed are unknown. At the suppression hearing, Mayol testified that, after his first call was transferred by the operator, he told a sergeant that his client had just been arrested, he wished to speak to the arresting officer, and "we're not consenting to any form of testing whatsoever." Mayol also testified that, at some point, he asked if he could speak directly to the defendant to "ask how she's doing and calm her down," but he could not recall if he made this request during the first or second call. In any event, he was not given the opportunity to speak with the defendant.

At the suppression hearing, the People failed to offer any testimony from the sergeant who had spoken with Mayol, nor did they offer any evidence regarding the feasibility of informing the defendant between 3:32 a.m. and 3:39 a.m. that an attorney had called and was currently speaking with a member of the NCPD. The suppression court generally "credited the testimony of all witnesses . . . [in] all material aspects," but made no express finding with regard to Mayol's equivocal testimony regarding his inability to recall if he requested to speak to the defendant during his first or second telephone call. The court granted that branch of the defendant's omnibus motion which was to suppress her chemical breath test results, finding that there had been "a denial of access to the lawyer." I would reverse the order and hold that the results of the chemical breath test are admissible.

Section 1194 (2) (a) of the Vehicle and Traffic Law provides that "[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of one

or more of the following: breath, blood, urine, or saliva," where, as here, a police officer has reasonable grounds to believe that the motorist has violated section 1192 of the Vehicle and Traffic Law. The test must be conducted within two hours after the motorist has been stopped or placed under arrest for such violation (*see* Vehicle and Traffic Law § 1194 [2] [a]; *People v Smith*, 18 NY3d 544, 548 n 1 [2012]). The Court of Appeals has recognized that chemical breath tests to determine BAC are an important investigative tool in the effort to combat driving while intoxicated, and the administration of these tests "is a time-sensitive proposition; to maximize the probative value of BAC evidence, the police endeavor to administer chemical tests as close in time as possible to the motor vehicle infraction, typically within two hours of an arrest" (*People v Smith*, 18 NY3d at 548). The legislature carefully chose the wording of the implied consent provision to ensure timely testing without the need for express consent, even in circumstances where the motorist is unconscious, incapacitated, or injured as a result of excessive drinking (*see People v Kates*, 53 NY2d 591, 595-596 [1981] [analyzing legislative history]).

Chemical BAC testing does not violate any federal or state constitutional right. Testing of unconscious or incapacitated motorists without their express consent does not violate the constitutional right to equal protection (*see id.* at 596). Compelling the motorist to undergo such testing does not violate the federal constitutional rights set forth in the Fourth Amendment (unreasonable searches and seizures), Fifth Amendment (privilege against self-incrimination), Sixth Amendment (right to counsel), or Fourteenth Amendment (due process) (*see Schmerber v California*, 384 US 757 [1966]). The police are not obligated to administer *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) prior to a chemical BAC test because no testimonial compulsion is involved and the defendant does not have the right to counsel at this stage of the investigation (*see People v Craft*, 28 NY2d 274, 277-278 [1971]; *see also People v Hager*, 69 NY2d 141, 142 [1987] [*Miranda* warnings not required prior to physical performance tests, which do not violate the defendant's privilege against self-incrimination under either the Federal or State Constitution]). A defendant has no constitutional right to refuse to take a chemical test (*see People v Shaw*, 72 NY2d at 1033). "[I]nasmuch as a defendant can constitutionally be compelled to take such a test, he has no constitutional right not to take one" (*People v Thomas*, 46 NY2d

100, 106 [1978]). Since, under the statutory scheme, there is no compulsion of any sort to elicit a refusal, the introduction of evidence of a defendant's refusal to take the test does not violate the Federal or State Constitution (see id. at 107-108, 110). There is no violation of the Sixth Amendment of the Federal Constitution if the police ignore the defendant's repeated requests to speak to his or her attorney prior to taking the test (see Miller v O'Bryan, 498 F Supp 2d 548, 557 [2007]).

A defendant does, however, have a "qualified" statutory right to decline to voluntarily take a chemical test with the understanding that the refusal will result in the immediate suspension and ultimate revocation of his or her driver's license for one year and will permit the People to elicit evidence of such refusal at any subsequent criminal trial (People v Smith, 18 NY3d at 548; see Vehicle and Traffic Law § 1194 [2] [b], [d], [f]). Even so, a defendant's invocation of the qualified statutory right to refuse may be superseded in a case involving death or serious physical injury to a person other than the driver where the police make an ex-parte application and obtain a court order compelling a chemical test (see Vehicle and Traffic Law § 1194 [3]; see also People v Elysee, 49 AD3d 33 [2007]; People v Whelan, 165 AD2d 313 [1991]). It is in connection with a defendant's qualified statutory right to refuse the test that the courts have considered the issue of access to counsel to aid the defendant in making this decision.

A defendant's "privilege of access to counsel" in this context was first addressed in People v Gursey (22 NY2d 224, 226 [1968]). In that case, the defendant, having "a particular attorney in mind," asked to call his attorney twice prior to making his decision whether to submit to a chemical breath test (id. at 227). The Court of Appeals determined that the denial of his requests "violated his privilege of access to counsel" (id. at 228), holding that "law enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand" (id. at 227). The Gursey Court factually distinguished a previous case in which a motorist had asked to consult with his lawyer on the ground that a defendant has "no . . . absolute right to refuse the test until a lawyer reaches the scene" (id. at 229, citing Matter of Finocchairo v Kelly, 11 NY2d 58, 61 [1962]; see Matter of Boyce v Commissioner of N.Y. State Dept. of Motor Vehs., 215 AD2d 476, 477 [1995]).

Subsequently, in *People v Shaw,* the Court of Appeals held that, because the defendant has no federal constitutional right to counsel during this stage of the investigation, there is no obligation to advise the defendant of a right to counsel:

> "The defendant has no constitutional right to refuse to consent to such a search. The right is entirely statutory and, by its terms, may be waived without an attorney's assistance. The Sixth Amendment does not require that the defendant be afforded counsel at this stage in the proceedings. Although the defendant was called upon to waive a statutory right, it was not a critical stage in the proceedings within the meaning of the Sixth Amendment because no judicial proceedings had been initiated against the defendant at that time. The defendant's suggestion that he should be afforded the same rights as a person placed in a police lineup is unavailing because the same rule applies to such proceedings; the right to counsel does not attach at a lineup prior to judicial intervention" (*People v Shaw,* 72 NY2d at 1033 [citations omitted]).

However, the Court noted that, "in this State, a defendant . . . generally has the right to consult with a lawyer *before deciding* whether to consent to a sobriety test, *if* he [or she] requests assistance of counsel" (*id.* at 1033-1034 [emphasis added]). In so holding, the Court apparently recognized that the *Gursey* rule was premised upon the right to counsel under the New York State Constitution (*see* NY Const, art I, § 6). The Court distinguished *Gursey,* holding that "when, as here, an attorney's assistance has not been requested, the fact that the defendant has made an uncounseled waiver of the statutory right to refuse the test . . . provides no basis for suppressing the results" (*People v Shaw,* 72 NY2d at 1034).

More recently, in *People v Smith,* the Court of Appeals characterized the holding in *Gursey* as providing "a limited right to counsel" which arises "if a defendant arrested for driving while under the influence of alcohol asks to contact an attorney *before responding to a request to take a chemical test*" (*People v Smith,* 18 NY3d at 549 [emphasis added]). The Court reiterated: "We have already rejected the notion that the police must notify a defendant concerning the limited right recognized in *Gursey*" (*id.* at 551, citing *People v Shaw,* 72 NY2d 1032 [1988]). "Where there has been a violation of the limited right to counsel recognized in *Gursey,* any resulting evidence may be

suppressed at the subsequent criminal trial" (*People v Smith*, 18 NY3d at 550).

The limited right to counsel is invoked only upon an express request by the defendant to consult his or her attorney prior to making the decision whether to submit to a chemical BAC test or to exercise the qualified right to refuse (*see People v Gursey*, 22 NY2d at 228; *People v Mora-Hernandez*, 77 AD3d 531 [2010] [the defendant made repeated requests for counsel prior to the administration of the test]). A general request for an attorney is not sufficient to invoke the right (*see People v Curkendall*, 12 AD3d 710, 714-715 [2004] [limited right not invoked when the defendant agreed to submit to the test but made a general request for an attorney upon receiving *Miranda* warnings]; *People v Vinogradov*, 294 AD2d 708, 709 [post-*Miranda* refusal to talk without an attorney does not invoke the limited right to counsel with respect to a breathalyzer test]; *People v Hart*, 191 AD2d 991 [1993] [the defendant's statements that he should have counsel did not unequivocally inform the police of his intention to retain counsel or that he wanted to consult with an attorney before undertaking the sobriety tests]).

Here, as the majority acknowledges, there is no evidence that the defendant asked to speak with an attorney at any time. Thus, she did not invoke her limited right to counsel, as defined in *Gursey*, *Shaw*, and *Smith* (*see People v Curkendall*, 12 AD3d at 714-715; *People v Vinogradov*, 294 AD2d at 709). Clearly, this situation is governed by the rule set forth in *Shaw*: "[W]hen, as here, an attorney's assistance has not been requested, the fact that the defendant has made an uncounseled waiver of the statutory right to refuse the test, provides no basis for suppressing the results" (*People v Shaw*, 72 NY2d at 1034). Thus, the record establishes that, at 3:30 a.m., the defendant validly waived her qualified statutory right to refuse the test, and her uncounseled waiver provides no basis for suppressing the test results.

More than two minutes after the defendant's valid waiver of her qualified statutory right to refuse, an attorney informed a member of the police department that he represented the defendant in custody. The relevant question at this point is whether the failure of the NCPD, between 3:32:21 a.m., and the taking of the defendant's breath sample at 3:39 a.m., to inform the defendant that her attorney had called, requires suppression of the breathalyzer results. I would hold that it does not.

The Court of Appeals has yet to consider a case involving an attorney's entry at the investigatory stage after the motorist

has made a valid waiver of the qualified statutory right to refuse. Other courts which have considered an attorney's entry into the investigation under various circumstances have found no violation of the right to counsel; however, the defendants in those cases, unlike the one before us, were each informed of their attorney's phone call, and thus, those courts were not faced with the question before us of whether the police had the obligation to notify the defendant of her attorney's contact prior to administering the test (*cf. People v Pfahler*, 179 AD2d 1062 [1992]; *People v Meytin*, 30 Misc 3d 128[A], 2010 NY Slip Op 52276[U] [2010]).

Nor has the Court of Appeals considered the interplay between the limited right to counsel and statutory authority for law enforcement to obtain a court order superseding the defendant's qualified right to refuse in a case involving death or serious physical injury. While I would agree with my colleagues in the majority that the nature of the alleged crime committed should not dictate the extent of a defendant's constitutional rights, this does not answer the question of whether a defendant has a constitutional right to counsel in this context in the first place.

In the absence of case law on point, the majority has taken guidance from decisions outside the area of law governing chemical BAC tests which concern the "indelible right to counsel" under the State Constitution with respect to a suspect's decision to waive his or her privilege against self-incrimination (*People v Grice*, 100 NY2d 318, 320 [2003]). In that context, the indelible right to counsel is invoked "before an action is commenced when . . . an attorney who is retained to represent the suspect enters the matter under investigation" by notifying the police of the representation (*People v Grice*, 100 NY2d at 321). As a corollary of this right, the police must "establish and maintain procedures which will insure that an attorney representing [a person in custody] may communicate with him [or her] and with the officials responsible for the investigation, without unreasonable delay" after the attorney has contacted the police (*People v Garofolo*, 46 NY2d 592, 600 [1979] [internal quotation marks omitted]; *see People v Borukhova*, 89 AD3d 194, 214-215 [2011]).

In my view, this line of cases has no application to the situation at hand involving a motorist's waiver of the qualified statutory right to refuse a chemical test. The indelible right to counsel is inconsistent with the statutory procedure allowing

law enforcement to overcome a counseled refusal to submit to the test in a case involving death or serious injury where the police obtain a court order. More importantly, not one of the constitutional underpinnings of the "indelible right to counsel" cases is present in any situation in which the Vehicle and Traffic Law authorizes a chemical test.

> "The indelible right to counsel arises from the provision of the State Constitution that guarantees due process of law, the right to effective assistance of counsel and the privilege against compulsory self-incrimination. The right is 'indelible' because once it 'attaches,' *interrogation* is prohibited unless the right is waived in the presence of counsel" (*People v Grice*, 100 NY2d at 320-321 [citations omitted; emphasis added]; *see* NY Const, art I, § 6).

> "[A]bsent the advice of an attorney, the average person, unschooled in legal intricacies, might very well unwittingly surrender [his or her privilege against compulsory self incrimination] when confronted with the coercive power of the State and its agents . . . Thus, our indelible right to counsel rule has developed to ensure that an individual's protection against self incrimination is not rendered illusory during pretrial interrogation" (*People v Hawkins*, 55 NY2d 474, 485 [1982] [internal quotation marks omitted]).

> "The rule that once a lawyer has entered the proceedings in connection with the charges under investigation, a person in custody may validly waive the assistance of counsel only in the presence of a lawyer breathes life into the requirement that a waiver of a constitutional right must be competent, intelligent and voluntary" (*People v Hobson*, 39 NY2d 479, 484 [1976]; *see People v Cunningham*, 49 NY2d 203, 208 [1980]).

Here, by contrast, compelling the submission to a chemical BAC test pursuant to Vehicle and Traffic Law § 1194, as opposed to interrogation, does not require the waiver of any constitutional right and implicates only a qualified statutory right to refuse. As noted above, the state and federal constitutional rights to remain silent are not implicated. Moreover, there is no state or federal constitutional right to counsel during the investigatory stage involving the chemical BAC test, except for

the limited right to counsel under the State Constitution as defined in *Gursey*, *Shaw*, and *Smith*. The limited right arises only upon a defendant's express, specific request, and thus, the indelible right to counsel, as defined in the interrogation cases to arise through an attorney's appearance in the case, cannot apply in this situation. In any event, even if the limited right to counsel is viewed more liberally to include a general right to counsel in making a decision whether to submit to a chemical BAC test, such a right must arise, if at all, prior to the defendant's decision whether to submit to the test. Thus, the indelible right to counsel would attach, if at all, only when counsel contacts the police prior to the defendant's waiver of his or her qualified statutory right to refuse. This did not happen here. Notably, the two courts to consider a situation in which an attorney appeared held that the defendants properly waived their limited right to counsel outside the presence of counsel after being informed that the attorney had called (*see People v Pfahler*, 179 AD2d at 1062; *People v Meytin*, 30 Misc 3d at 128[A], 2010 NY Slip Op 52276[U] [2010]). These holdings implicitly are at odds with the indelible right to counsel in the interrogation context (*see People v Grice*, 100 NY2d at 320-321), but consistent with the rule that there is no state or federal constitutional right to counsel during the investigatory stage involving the chemical BAC test, except for the limited right arising upon a defendant's request (*see People v Craft*, 28 NY2d 274, 277-278 [1971]). Since there is no fear that the defendant involuntarily waived a constitutional right, the constitutional underpinnings and the purpose of the indelible right to counsel are not present.

Further, even if we were to take guidance from *Garofolo* and other cases concerning the indelible right to counsel, the result reached by the majority does not necessarily follow. If this were a matter involving a defendant's uncounseled waiver of his or her privilege against self-incrimination, the remedy for an unreasonable delay in affording access to counsel is the suppression of evidence obtained from the defendant's uncounseled waiver of the constitutional right to remain silent (*see e.g. People v Garofolo*, 46 NY2d at 600-601 [the defendant waived his right to remain silent and gave a written statement to the police after entry of counsel in the matter]). Even in such a circumstance, evidence obtained from a defendant pursuant to an intelligent and knowing waiver of a constitutional right *prior* to counsel's entry in the investigation is not subject to suppression (*see id.*

at 601-602 [the defendant's oral statements to police upon his uncounseled waiver of the right to remain silent were admissible, but his written statement taken after counsel's entry and police denial of access was suppressed]). Applying this holding here by analogy, the chemical breath test results were obtained as a result of the defendant's valid uncounseled waiver of the statutory right made prior to counsel's entry into the case, and thus, the test results should not be suppressed.

The majority also draws an analogy to cases involving the state constitutional right of access to counsel during preaccusatory, investigative lineups. In that context, as here, although the accused does not have a state or federal constitutional right to counsel in general (*see People v Wilson*, 89 NY2d 754, 758 [1997]; *People v Hawkins*, 55 NY2d at 487), where the police have been notified that an attorney represents the accused, "the police may not proceed with the lineup without at least apprising the defendant's lawyer of the situation and affording the lawyer a reasonable opportunity to appear" (*People v Mitchell*, 2 NY3d 272, 274-275 [2004]; *see People v Wilson*, 89 NY2d at 758-759; *People v LaClere*, 76 NY2d 670, 672-673 [1990]). The right to counsel attaches in that situation even though defense counsel is effectively limited to "the relatively passive role of an observer" during the lineup (*People v Hawkins*, 55 NY2d at 485). However, in a lineup, unlike here, the police are not acting under a two-hour statutory constraint. Moreover, a defendant has no right to refuse to participate in a lineup, while the defendant here had the qualified statutory right to refuse the chemical BAC test. Allowing an attorney to enter the case after the defendant effectively waived the qualified statutory right affords the defendant the opportunity to reconsider and revoke that previous valid waiver. In my opinion, the analogy ends there.

In conclusion, the rule stated by the majority, allowing a motorist to withdraw a previous valid waiver, challenges the clear pronouncement by the Court of Appeals that "an uncounseled waiver of the statutory right to refuse the test, provides no basis for suppressing the results" (*People v Shaw*, 72 NY2d at 1034). It further challenges the holding that the limited right to counsel must be invoked "*before* responding to a request to take a chemical test" (*People v Smith*, 18 NY3d at 549 [emphasis added]; *see People v Shaw*, 72 NY2d at 1034 ["before deciding"]). The rule stated by the majority leads to the inconsistent result that evidence obtained pursuant to a valid, uncounseled waiver of the constitutional right to remain silent is not subject

to suppression (*see People v Garofolo*, 46 NY2d at 601-602), whereas evidence obtained pursuant to a valid waiver of a *qualified statutory* right is being suppressed. Notably, we generally do not give a defendant a second chance to reconsider a previous valid waiver, even when that waiver involves the most cherished constitutional rights (*cf. People v Alexander*, 97 NY2d 482, 485 [2002] [a defendant may not withdraw a guilty plea "merely for the asking"]; *People v Rossetti*, 95 AD3d 1362 [2012] [same]). Under the rule announced today, a defendant is not only given the right to consult with an attorney after making a decision to submit to a chemical BAC test, the defendant is also given the right to reconsider and revoke a previous valid consent. In my view, this goes too far in expanding the previously established limited right to counsel to assist the defendant in determining whether to exercise the qualified statutory right to refuse a chemical test under Vehicle and Traffic Law § 1194.

Accordingly, I would reverse the order of the Supreme Court and deny that branch of the defendant's omnibus motion which was to suppress the test results.

DICKERSON and MILLER, JJ., concur with LEVENTHAL, J.; ANGIOLILLO, J.P., dissents in a separate opinion.

Ordered that the order is affirmed.