Bergan, J.
Upon basic constitutional principles, it was laid down in People v. Donovan (13 N Y 2d 148 [1963]) that a confession taken by police from a person accused of crime after counsel had been denied access to him was inadmissible on the trial. The case now before us comes within the rule announced in Donovan; and, although there are some differences between them, the differences do not distinguish the cases.
Appellant has been convicted of murder, second degree, in Westchester County Court. He was arrested October 7, 1960 shortly after 1 o’clock in the morning. He was taken first to a hospital where a gastric lavage was administered upon a report that he had swallowed a number of ‘ ‘ Sonambul ’ ’ sleeping tablets. The stomach washings contained no drug.
Following this procedure and while he was in police custody, an incriminating statement was taken from defendant by an Assistant District Attorney at Westchester County Parkway Police Headquarters. The record shows the taking in question and answer form of this statement began at 2:58 a.m., continued to 4:12 a.m., when it was briefly interrupted, and then continued to 4:45 a.m., when it was concluded.
The statement is described in the People’s brief as “ a complete and voluntary confession of the murder of Kathryn Levy which was recorded stenographically ”. A further statement was taken from defendant by police at the scene of the crime at 7:00 a.m. and there was an additional tape-recorded statement taken by the police at 8:00 a.m. Defendant was arraigned in court on the same morning at 10:00 a.m.
An attorney who had acted for defendant in a prior civil case was called by defendant’s father. The lawyer testified that at about 3:00 a.m. he arrived at the place he was asked to go, Troop K State Police Barracks, which was near but not at the same place as Westchester County Parkway Police Headquarters, where defendant was being held.
At the State Police barracks, the lawyer was told that defendant had taken some drugs and could not then be seen; but if he waited he could see defendant. After a wait of 10 minutes the lawyer drove to the Parkway Police headquarters to which he was directed. He testified he arrived there between 3:15 and 3:30. He identified himself and asked to see the defendant. This was refused, was requested again, and again was refused. *181 Troop K of the State Police is on the Taconic State Parkway, and the Westchester Parkway Police Headquarters is on Saw Mill Eiver Parkway; but both are at Hawthorne.
The record thus shows that at 3 o’clock, just about the time when the taking of defendant’s statement began at the Parkway headquarters, his lawyer arrived at the State Police barracks, where officials had sufficient knowledge of the defendant’s location to advise the attorney to wait because of defendant’s physical condition, and then to advise him further where defendant could be found.
The People would distinguish Donovan by suggesting that by the time the attorney reached the actual place of detention of the defendant, the confession had proceeded to the point that it should be admissible notwithstanding the fact counsel was refused access to the defendant by police. This becomes the main legal issue in the case.
Although a lieutenant of the Parkway Police testified that the attorney reached the Parkway headquarters at about 3:30 a.m., which is consistent with the lawyer’s oavu testimony, the People argue from some other rather inferential testimony that it must have been about 4 o ’clock Avhen he arrived there.
Noting that the taking of the statement began at 2:58 a.m., the People argue that it must have proceeded before the lawyer came to a point at AAdiich “ appellant Avas entirely committed to his confession that he had strangled Cathy Levy ’ ’.
If there had been an interference with the right to counsel within the Donovan rule, it would be wholly impracticable to dissect a confession into parts to be deemed admissible before counsel arrived and was refused access to the accused, and parts to be deemed inadmissible after he arrived.
Such fragmentation would lead to marked confusion in police investigations and to uncertainty in the admissibility of evidence on criminal trials. The collateral issue would frequently arise as to exactly when counsel arrived and was refused admission, and how damaging a confession had become at just that moment. Subtleties as delicate as these would be equally unworkable as a rule governing police action and as a rule of evidence.
A pragmatic and much simpler test, which would at once satisfy the requirements of Donovan and also the needs of a reasonably workable police policy in questioning an accused, *182 would be invariably to admit the lawyer to see his client upon proper identification.
If the confession has already been taken, the police not only would lose nothing of their case, since Donovan interdicts the confession only where the lawyer has been refused access, but they would save the confession as evidence since it would in those circumstances be admissible under Donovan.
If the confession had been partly taken and the lawyer is admitted and advises his client not to continue with it, the part already taken would be admissible under Donovan; and, of course, if no confession has been made when the lawyer arrives, nothing is lost to the prosecution since, if he is refused access, the entire confession would be inadmissible.
In sum, then, considerations of good prosecution policy require that police afford access when requested by counsel for an accused. To avoid irregularity or uncertainty about whether there has or has not been an actual appearance by counsel while an accused is in custody, it would seem reasonable to expect that the bar would follow the practice of requesting police blotter or other record entry of an appearance to confer with an accused and that police officials make such entries.
Thus, the distinction urged by the People between this case and Donovan is not decisive. In that case counsel was refused access to the accused before any part of a question and answer statement began and he was again refused access after the statement was taken and before it was signed.
In the case now before us the attorney appeared at an office of a police system having an active role in the prosecution, but not precisely where the accused was in physical custody, just about when the taking of the confession started (i.e., 2:55 or 3:00 a.m.). Within half an hour and while the statement still had an hour and a quarter to go to completion and long before the later statements at 7 and 8 o’clock were taken, counsel arrived at the place of actual detention. The lawyer subsequently appeared with defendant at his arraignment in court at 10 o’clock.
We would in any event feel required to apply the Donovan rule to this state of facts; but we are led also to do this by the larger policy consideration which interdicts fragmentation of *183 statements which we have discussed as having large potentially adverse effects on police inquiry and on criminal trials.
Although there was in Donovan (13 N Y 2d 148, supra) an unlawful delay in arraignment, nothing turned on that fact since it was the taking of the confession from the defendant after his attorney had requested and been denied access to him that the court considered decisive. The present case may not, therefore, be distinguished on the ground that there was here no impermissible arraignment delay.
The judgment should be reversed and a new trial ordered.