THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MEL PATRICK LYNCH and DOMINICK BYRNE, Appellants.

Second Department, April 10, 1978

## APPEARANCES OF COUNSEL

*Maloney, Viviani & Higgins (Walter J. Higgins, Jr.,* of counsel), for Mel P. Lynch, appellant.

*Peter E. De Blasio* for Dominick Byrne, appellant.

*Carl A. Vergari, District Attorney (Janet Cunard* of counsel), for respondent.

## OPINION OF THE COURT

SHAPIRO, J.

Defendants Lynch and Byrne were each convicted in the Supreme Court, Westchester County, of grand larceny in the first degree, upon a jury verdict. The court, on January 6, 1977, imposed a sentence of 4 to 12 years on defendant Lynch and 3 to 9 years on defendant Byrne. In this consolidated appeal, each defendant claims that the sentence imposed upon him was excessive; the Byrne appeal also brings up for review the partial denial, after a *Huntley* hearing, of his motion to suppress certain inculpatory statements. We affirm.

Although the defendants were originally charged with the first degree kidnapping of one Samuel Bronfman and with criminal possession of a weapon in the second degree, as well as grand larceny in the first degree, they were found guilty only of the latter crime. We have carefully and separately considered the claim of each defendant that, as to him, the sentence was excessive and should be modified. It suffices to say, without their recital here, that the facts in the record do not indicate that the sentences were in any way excessive or unjust. They should therefore not be disturbed.

We now come to the suppression issue, which is raised only by the defendant Byrne. To understand his contention that the court was in error in only partially granting his motion to suppress, we accept his version of the facts as they are contained in his brief:

"Just prior to selection of a jury, Judge Beisheim held the Huntley Hearing in re defendant appellant Dominick Byrne's motion to suppress oral and written statements made on Sunday, August 17, 1975 while he was in custody at FBI Headquarters in Manhattan from about 5:00 a.m. until about 7:00 p.m. During said Huntley Hearing, the Court found that on Sunday, August 17, 1975 an interview of defendant appellant Dominick Byrne was conducted by special agents of the FBI McGonigle and Fuller concerning Dominick Byrne's involvement in the alleged Sam Bronfman kidnapping. Said interview was conducted at FBI Headquarters in Manhattan in the office of Special Agent in Charge, Ingram.

"S.A.C. Ingram was one of four FBI Agents in charge of the entire New York office of the FBI. The interview commenced at about 5:00 a.m. and was terminated approximately 14

hours later at about 7:00 p.m. when Dominick Byrne signed a statement prepared by the said FBI Agents.

"At about 2:10 p.m. on that day and five hours before the termination of the interview, Peter E. De Blasio telephoned from New Hampshire to FBI Headquarters and spoke with S.A.C. Ingram and advised him of his having been retained by the family of defendant Dominick Byrne to represent Dominick Byrne and he requested and directed that there be no further questioning of Dominick Byrne. Approximately one half hour later De Blasio again telephoned to FBI Headquarters and spoke to Assistant United States Attorney, Feffer in the same vein. At that time Assistant United States Attorney Feffer and Assistant United States Attorney Pedowitz were interrogating Dominick Byrne in the presence of Special Agents, McGonigle and Fuller at FBI Headquarters in S.A.C. Ingram's room. Instead of terminating the questioning immediately upon being advised of counsel's representation of Dominick Byrne the Assistant United States Attorneys continued their interrogation until about 3:00 p.m. at which time they had Dominick Byrne sign a statement which statement was witnessed by Special Agents McGonigle and Fuller.

"At that time the Assistant United States Attorneys left and Special Agents McGonigle and Fuller continued their interview and interrogation of Dominick Byrne which had been temporarily interrupted by lunch at about 12:20 p.m., and by the arrival of the Assistant United States Attorneys at about 12:50 p.m.

"At about 4:30 p.m., which was about one and a half hours after Dominick Byrne signed the statement prepared by the Assistant United States Attorneys and about two hours and twenty minutes after notification of counsel's retention, Special Agents McGonigle and Fuller completed their questioning of Dominick Byrne and prepared a written statement which they had him sign at about 7:00 p.m."

On these facts the trial court, citing, *inter alia, People v Hobson* (39 NY2d 479), determined that Byrne's constitutional rights were violated when the Federal authorities continued to interrogate him after they became aware, at 2:10 P.M., that Byrne's attorney had entered the proceeding and had demanded the cessation of questioning. Hence, the court suppressed the fruits of the interrogation after 2:10 P.M., i.e., the 3:00 P.M. and 7:00 P.M. signed statements, as well as all oral statements made after 2:10 P.M. The trial court, however,

refused to suppress Byrne's oral inculpatory remarks made prior to 2:10 P.M. Byrne had the opportunity, at the *Huntley* hearing, to testify in his own behalf without waiving his right against self incrimination at the trial. Under these circumstances, it is significant that, at the *Huntley* hearing, Byrne did not contradict, dispute or challenge the People's proof as to the substance of his confessions prior to 2:10 P.M.

■ It is clear that when Byrne's lawyer called at 2:10 P.M. and demanded that the authorities terminate the interrogation of his client, they should have done so forthwith (see *People v Gunner*, 15 NY2d 226; *People v Donovan*, 13 NY2d 148; cf. *People v Ramos*, 40 NY2d 610; *People v Hobson*, 39 NY2d 479, *supra; People v Arthur*, 22 NY2d 325).

The record here indicates, and the trial court found, that prior to the 2:10 P.M. notification by attorney De Blasio that he represented Byrne, the latter had given a full oral confession to Federal Bureau of Investigation agents Fuller and McGonigle, and to Assistant United States Attorneys Feffer and Pedowitz, in which he repudiated his first account of the incident, i.e., that two armed men had forced him and Lynch to aid them in the kidnap scheme. FBI agent Fuller's testimony at the *Huntley* hearing indicates that virtually all essential facts had been admitted by Byrne by 12:20 P.M.

However, relying upon *People v Failla* (14 NY2d 178), defendant Byrne contends that if a confession is being taken at a time when defense counsel notifies the police of his representation, the part of the confession which was taken *prior* to such *notice* is inadmissible "if the law personnel did not follow the law and continued with interrogation." While the language in *Failla* upon which Byrne relies, when broadly read, is susceptible of such an interpretation, that language must be read in the light of, and must be limited to, its factual setting (see *Hogan v Board of Educ.*, 200 NY 370, 373; *Crane v Bennett*, 177 NY 106, 111; *Colonial City Traction Co. v Kingston City R. R. Co.*, 154 NY 493, 495). In *Failla* the attorney appeared (pp 182-183) "just about when the taking of the confession started", and it was in that context that the court spoke of the "larger policy consideration which interdicts fragmentation of statements".

To apply that general statement here and to hold that the oral statements made by Byrne prior to 2:10 P.M. (which constituted a confession independent of the later statements) must be suppressed simply because the authorities wrongfully

failed to cease their interrogation at that time, would serve no logical purpose. It would be tantamount to saying that a statement which was legal when taken *ipso facto* becomes illegal and inadmissible by reason of the questioners' *subsequent* conduct. The adoption of such a stringent and immutable rule would not be in the public interest; nor is it constitutionally required. Byrne's constitutional rights were fully protected (and the authorities penalized) by the suppression of both the written and oral statements made after 2:10 P.M. So far as my research discloses, no such absolute rule has been laid down in this State. In cases in which the Court of Appeals has cited *Failla* (14 NY2d 178, *supra),* it has done so for the proposition that the rule enunciated in *People v Donovan* (13 NY2d 148, *supra)* renders an entire confession inadmissible where "part of the confession had been made before counsel had arrived *and had been denied access to the accused"* (see, e.g., *People v McKie,* 25 NY2d 19, 25 [emphasis supplied]).

In considering the applicability of the *Failla* rule under circumstances somewhat similar to those in our case, the Appellate Division, Fourth Department, in *People v Wesley* (32 AD2d 887), interpreted the *Failla* case as we do here. In *Wesley* the defendant made "a complete confession". At that point "she was asked if she would like to have an attorney and replied, 'Sure I would, I need one'", but the police nevertheless continued to question her. The only distinction between that case and the one at bar is that there, after the defendant requested counsel, the police continued their interrogation, whereas here the questioning was continued after counsel's representation of the defendant became known to them. In upholding the admissiblity of those parts of the confession taken *before* the defendant stated that she wanted counsel, the court said: "It may well be that inasmuch as defendant did not yet have counsel she should not have been questioned any further after making that answer. (Cf. *People v. Sanchez,* 15 N Y 2d 387.) However, in any event, the only portion of the confession introduced at trial was questions and answers given before she requested counsel and the questions and answers contained in the next eight pages were not received in evidence. Furthermore, no new information was elicited in the excluded portion which in any way prejudiced the defense. In light of the court's decision following the *Huntley* hearing we conclude that the first 17 pages were properly received in evidence. In *People v. Failla* (14 N Y 2d

178), relied upon by the defendant, the questioning of defendant began at 2:58 A.M. and was concluded at 4:45 A.M.; defendant's attorney contacted the police at about 3:00 A.M. and was told that he could not see his client. In these circumstances the confession was held to be inadmissible on the trial under the authority of *People v. Donovan* (13 N Y 2d 148). In the instant case defendant did not have an attorney at any time during the questioning and the trial court did not admit anything she said after she had requested a lawyer."

We are *not* here dealing with the kind of constitutional problem which arises when the *initial* interrogation, which produces damaging admissions, is constitutionally defective by failure to give the requisite *Miranda* warnings (see *Miranda v Arizona,* 384 US 436) and the *later* interrogation proceeds after proper warnings have been given, but the defendant is so psychologically coerced by his former confession that he *repeats* the damaging admissions initially made (not knowing, of course, that the earlier admissions would be suppressed). Under such circumstances there exists a very definite reason (the cat-out-of-the-bag theory) for suppressing the statements which resulted from both interrogations, notwithstanding the fact that the *second* interrogation was ostensibly proper (see *People v Stephen J. B.,* 23 NY2d 611, 615; *People v Chapple,* 38 NY2d 112, 115).

■ Here, the reverse situation obtains—the earlier interrogation was entirely proper and the disclosures thus obtained should not be nullified and denied admission by reason of the subsequent conduct of the interrogators.

■ ■ Accordingly, the limited suppression ordered by the Criminal Term was proper under the circumstances portrayed by this record. The judgment convicting defendant Byrne, and the sentence imposed against defendant Lynch, should be affirmed.

DAMIANI, J. P., SUOZZI and RABIN, JJ., concur.

Judgment of the Supreme Court, Westchester County, rendered January 6, 1977, as against defendant Byrne, and sentence of the same court, imposed January 6, 1977, as against defendant Lynch, affirmed, and, with respect to defendant Byrne, case remitted to the Supreme Court, Westchester County, for further proceedings pursuant to CPL 460.50 (subd 5).