OPINION OF THE COURT
 

 Graffeo, J.
 

 In this case we must determine whether the state constitutional right to counsel was violated when police continued to question and obtain inculpatory statements from the defendant after his father informed a detective that an attorney was en route to the police station. Based on the facts of this case, we conclude that defendant’s indelible right to counsel did not attach by virtue of the information provided by his father.
 

 
 *320
 
 According to the facts found by the suppression court and undisturbed by the Appellate Division, defendant was arrested after being implicated in a shooting. He was taken to a police station and advised of his
 
 Miranda
 
 rights. At 11:20 a.m. he executed a form acknowledging and waiving those rights. Defendant subsequently provided two written statements, one signed at 1:45 p.m. and the other at 2:00 p.m., in which he admitted that he acted as a lookout and hid a handgun for the actual shooter.
 

 At about 12:30 p.m., defendant’s father arrived at the station and told a detective that his son should not be questioned because he had an attorney coming to the station. Defendant’s father then left the station after being informed that he could not speak to his son. At 2:10 p.m., defendant’s attorney contacted the lead detective by telephone and notified bim that defendant was represented by counsel. The interrogation immediately ceased.
 

 Defendant moved to suppress his written statements, arguing that his state constitutional rights were violated because his indelible right to counsel attached when his father informed the detective that an attorney was coming to the station. As a result, defendant asserted that the two inculpatory statements were inadmissible. The hearing court denied the suppression motion, concluding that the interrogation was not improper because defendant made both statements before an attorney had contacted the police and requested the cessation of questioning.
 

 Following a jury trial, defendant was acquitted of attempted murder in the second degree but convicted of two counts of burglary in the first degree, and one count each of burglary in the second degree and criminal possession of a weapon in the second degree. The Appellate Division affirmed the convictions and a Judge of this Court granted leave to appeal.
 

 Defendant primarily relies upon
 
 People v Arthur
 
 (22 NY2d 325 [1968]) for the proposition that the identity of the person who apprises the police that a suspect is represented by counsel is not relevant to a determination of whether an attorney has entered a criminal matter. We disagree.
 

 The indelible right to counsel arises from the provision of the State Constitution that guarantees due process of law, the right to effective assistance of counsel and the privilege against compulsory self-incrimination
 
 (see
 
 NY Const, art I, § 6;
 
 People v Bing, 76
 
 NY2d 331, 338-339 [1990]). The right is “indelible”
 
 *321
 
 because once it “attaches,” interrogation is prohibited unless the right is waived in the presence of counsel (see
 
 People v Hobson,
 
 39 NY2d 479, 481 [1976]). Attachment can occur in several ways. The right to counsel arises when a criminal action is formally commenced by the filing of an accusatory instrument (see
 
 People v Ramos,
 
 99 NY2d 27, 32 [2002];
 
 People v Di Biasi, 7
 
 NY2d 544, 550-551 [I960]). A suspect’s right to counsel can also attach before an action is commenced when a person in custody requests to speak to an attorney or when an attorney who is retained to represent the suspect enters the matter under investigation
 
 (see People v West,
 
 81 NY2d 370, 373-374 [1993];
 
 People v Hobson,
 
 39 NY2d at 481).
 

 Defendant contends that his attorney “entered” the case and thereby triggered his indelible right to counsel at the moment his father advised the police that there was an attorney on the way to the police station.
 
 [1]
 
 The significance of an attorney’s “entry” into a criminal case was first recognized in
 
 People v Donovan
 
 (13 NY2d 148 [1963]), which addressed the admissibility of a written confession taken from a defendant “after the police had refused to allow an attorney, retained for [the defendant] by his family while he was in custody, to see or speak with him”
 
 (id.
 
 at 151). We concluded that the confession had to be excluded because it was obtained after the attorney had requested and been denied access to his client. We subsequently held that a telephonic communication between a defendant’s attorney and the police suffices to establish counsel’s entry into a case, at which point the police are required to cease all questioning
 
 (see People v Gunner,
 
 15 NY2d 226, 231-232 [1965]).
 

 In Arthur
 
 we addressed whether the right to counsel attaches in the absence of a formal retainer between a suspect and a lawyer. The attorney, who represented the defendant in several unrelated civil matters, went to police headquarters to see his client after learning of the defendant’s arrest. Counsel identified himself as the defendant’s attorney and asked to speak to his client. The police refused access until questioning was completed and the defendant had signed a written confession. After the attorney met with his client he informed the police that they should not have further discussions with the defendant. The following morning, a detective elicited ad
 
 *322
 
 ditional incriminating statements in counsel’s absence. This Court concluded that the defendant’s statements were taken in violation of the indelible right to counsel, reasoning that the right is not dependent upon such “ ‘mechanical’ and ‘arbitrary’ requirements” as a formal retainer but rather “once the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant, the accused’s right to counsel attaches” (22 NY2d at 329).
 

 Defendant in this case relies upon the “know or have been apprised” language in
 
 Arthur
 
 to support his contention that the identity of the individual who notifies the police that a defendant is represented by counsel is irrelevant. In the 35 years since
 
 Arthur
 
 was decided, however, we have not altered the rule that assures the reliability of the representation regarding the retention of counsel by requiring the personal involvement of an attorney or law firm. Our decisions prior to and since
 
 Arthur
 
 demonstrate that “entry” is premised on the actual appearance or communication by an attorney
 
 (see e.g. People v West,
 
 81 NY2d at 374;
 
 People v Schaeffer, 56
 
 NY2d 448, 454 [1982];
 
 People v Marrero,
 
 51 NY2d 56, 59 [1980];
 
 People v Garofolo,
 
 46 NY2d 592, 599-600 [1979];
 
 People v Pinzon,
 
 44 NY2d 458, 464 [1978];
 
 People v Hobson,
 
 39 NY2d at 481-482;
 
 People v Donovan,
 
 13 NY2d at 151) or the attorney’s professional associate
 
 (see People v Ressler,
 
 17 NY2d 174, 178 [1966],
 
 rearg denied
 
 17 NY2d 918 [1966]).
 

 People v Schaeffer
 
 (56 NY2d 448 [1982]) is not inconsistent with the need for direct communication by counsel. In
 
 Schaeffer
 
 the defendant took police officers to his mother’s house to retrieve a murder weapon. While there, his mother told a detective that she had an attorney on the telephone. The detective refused to talk to the attorney and indicated to the defendant’s mother that the lawyer would have to meet the officers at the police station. The defendant later gave an incriminating statement at the station without counsel being present. The People conceded, and we determined in
 
 Schaeffer,
 
 that the admission of the statement was erroneous because the defendant’s right to counsel had attached once the police knew the attorney was on the telephone attempting to speak to the officers
 
 (see id.
 
 at 454).
 

 Our right to counsel jurisprudence has continuously evolved with the ultimate goal of “achieving a balance between the competing interests of society in the protection of cherished individual rights, on the one hand, and in effective law enforce
 
 *323
 
 ment and investigation of crime, on the other”
 
 (People v Waterman,
 
 9 NY2d 561, 564 [1961]). This objective is attained through the adoption of “pragmatic and * * * simple [] test[s]”
 
 (People v Failla,
 
 14 NY2d 178, 181 [1964]) grounded on “common sense and fairness”
 
 (People v Bing,
 
 76 NY2d at 339) which “avoid irregularity or uncertainty about whether there has or has not been an actual appearance by counsel”
 
 (People v Failla,
 
 14 NY2d at 182). An appearance or direct communication by counsel is the most “practical [rule] under the circumstances”
 
 (People v Pinzon,
 
 44 NY2d at 464) because it “provides] an objective measure to guide law enforcement officials and the courts”
 
 (People v Robles,
 
 72 NY2d 689, 699 [1988]), and confirms that counsel has been “actually retained” to represent the defendant
 
 (People v West,
 
 81 NY2d at 373).
 

 It is true, as defendant claims, that we have consistently rejected attempts to undermine the right to counsel with “mechanical” requirements
 
 (see People v Arthur,
 
 22 NY2d at 329;
 
 People v Gunner,
 
 15 NY2d at 232). Our refusal, however, has always been based upon an unequivocal indication that counsel has entered a criminal matter
 
 (see e.g. People v Pinzon,
 
 44 NY2d at 464-465). In such instances, we have declined to rely on factors that are either trivial
 
 (see People v Arthur,
 
 22 NY2d at 329 [attachment not dependent upon the existence of a formal retainer agreement]), impractical
 
 (see People v Gunner,
 
 15 NY2d at 231-232 [counsel not required to be physically present at location where client is in custody]) or fundamentally unfair to the rights of the accused
 
 (see People v Pinzon,
 
 44 NY2d at 464-465 [attorney not required to inform specific police officer in charge of investigation but can give notice of representation by calling general information number at police station]). The certainty of establishing the retention of counsel is critical because at that juncture, law enforcement is obligated to determine whether that representation continues in situations where the scope of the attorney-client relationship is uncertain
 
 (see e.g. People v Marrero,
 
 51 NY2d at 59;
 
 People v Coleman,
 
 42 NY2d 500, 507 [1977];
 
 People v Ramos,
 
 40 NY2d 610, 617-618 [1976]).
 

 The bright-line rule we reaffirm in this case insures that counsel’s involvement is reliably communicated to the police as soon as possible, thereby preventing an interrogation from continuing on the basis of what a particular police officer may
 
 *324
 
 consider to be ambiguous or untrustworthy information provided by a relative or friend of the suspect, or some other third party. Although it is conceivable that a third party could reliably impart knowledge of counsel’s involvement to the police, it would be unreasonable to require the police to cease a criminal investigation and begin a separate inquiry to verify whether the defendant is actually represented by counsel. Direct communication by an attorney or a professional associate of the attorney to the police assures that the suspect “has actually retained a lawyer in the matter at issue” and justifies the immediate cessation of an interrogation
 
 (People v West,
 
 81 NY2d at 373-374;
 
 see People v Ressler,
 
 17 NY2d at 178).
 
 [2]
 

 Defendant further asserts that an interrogation should stop for a “reasonable” amount of time while the police await counsel’s entry or investigate whether counsel has actually been retained. The standard defendant advocates would, however, be “unworkable as a rule governing police action” by creating a multitude of “collateral issuefs]” that we have carefully avoided injecting into the principles that govern the right to counsel
 
 (People v Failla,
 
 14 NY2d at 181). The “uncertainty” inherent in the rule defendant proposes and the “destabilizing” effects
 
 (People v Bing,
 
 76 NY2d at 342) that it would have upon the clear, workable standards that have been the hallmark of our right to counsel jurisprudence are self-evident. We therefore hold that an attorney “enters” a criminal matter and triggers the indelible right to counsel when the attorney or a professional associate of the attorney notifies the police that the suspect is represented by counsel.
 

 Here, the information provided to the detective by defendant’s father did not constitute sufficient notification of the entry of counsel and therefore defendant’s indelible right to counsel did not attach. Consequently, the police did not violate defendant’s state constitutional right to counsel by continuing their interrogation and defendant’s inculpatory statements were properly admitted in evidence at trial.
 

 
 *325
 
 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Cipabick, Rosenblatt and Read concur.
 

 Order affirmed.
 

 [1]
 

 . Defendant does not claim that this lawyer was representing him on other pending criminal charges at the time of his arrest
 
 (compare People v Burdo,
 
 91 NY2d 146, 149-150 [1997]).
 

 [2]
 

 . Nor is it arbitrary to differentiate between information provided by a defendant and a third party. A defendant’s statement that counsel has been retained is considered an “invocation” of the indelible right to counsel, as opposed to actual “entry” by an attorney (see
 
 generally People v Roe,
 
 73 NY2d 1004, 1006 [1989];
 
 People v Ellis,
 
 58 NY2d 748, 749-750 [1982]). A third party, of course, cannot invoke the right on behalf of an adult defendant because “the right to counsel is personal” to the accused
 
 (People v Bing,
 
 76 NY2d at 350).