OPINION OF THE COURT
Leventhal, J.
This case calls upon us to address a matter of first impression involving the right to counsel under the New York Constitution (see NY Const, art I, § 6), where the defendant consented to a chemical breath test to determine her blood alcohol content (hereinafter BAG), but, prior to the commencement of the test, the police made no effort to inform the defendant that her attorney had appeared in the matter. For the reasons which follow, we hold that where, as here, the police are aware that an attorney has appeared in a case before the chemical breath test begins, they must make reasonable efforts to inform the motorist of counsel’s appearance if such notification will not substantially interfere with the timely administration of the test. Since the People failed to establish that notifying the defendant of her attorney’s appearance would, in fact, have interfered with the *6 timely administration of the chemical breath test, we conclude that the Supreme Court properly granted that branch of her omnibus motion which was to suppress the results of that test.
Following a collision between the defendant’s vehicle and a pedestrian in Nassau County, the defendant was charged with manslaughter in the second degree (see Penal Law § 125.15 [1]), vehicular manslaughter in the second degree (see Penal Law § 125.12 [1]), and two counts of operating a motor vehicle while under the influence of alcohol (see Vehicle and Traffic Law § 1192 [2], [3]).
At a suppression hearing, evidence was adduced demonstrating that, on August 30, 2010, at approximately 2:05 a.m., Nassau County Police Officers responded to the scene of a motor vehicle accident. At the scene, the officers observed the defendant standing beside the door of her vehicle crying and speaking on her cell phone. The defendant’s vehicle had a dented hood and a crushed windshield. Between 50 to 70 feet away from the defendant’s car lay an injured pedestrian. The pedestrian subsequently died from his injuries. The defendant appeared intoxicated and, after the officers conducted various field sobriety tests, they placed the defendant under arrest at 2:40 a.m. and transported her to the Central Testing Section at Nassau County police headquarters. When the defendant’s family learned of the accident and her arrest, they immediately contacted an attorney and arranged for him to represent the defendant.
At police headquarters, the police requested that the defendant submit to a chemical breath test. The People submitted into evidence a consent form initialed by a police officer and signed by the defendant wherein the defendant agreed to submit to the chemical breath test at 3:30 a.m. The parties stipulated that at 3:39 a.m. the defendant’s breath was drawn.
Anthony Mayol, the attorney retained by the defendant’s family, testified on her behalf. According to telephone records submitted into evidence by the People, at 3:31 a.m. Mayol called and spoke to a police dispatcher at Nassau County police headquarters, and was transferred to “Detention” at 3:32 a.m. This telephone call lasted a total of nine minutes and two seconds. Mayol testified that during this phone call with Detention, he informed the police that he represented the defendant and stated, “You have to stop all questioning and we’re not consenting to any form of testing whatsoever.” Mayol’s cell phone records show that he remained on the line with the police until *7 3:39 a.m., the time that the defendant’s breath was drawn. Mayol testified that he was told that someone from the precinct would call him back.
The People did not offer any testimony from the police officer who spoke with Mayol during the initial phone call. According to the prosecutor, that individual had no recollection of the relevant facts.
At 4:33 a.m., after Mayol did not receive a return call from the police, he telephoned police headquarters a second time. According to Mayol, he asked to speak directly to the defendant, but he could not recall whether he made this request during the first or second call; he testified, “I almost want to say it was the first time, but I couldn’t tell you for certain it was the first time. It was one of the two times that I definitely asked to speak to her.” The police did not permit Mayol to speak with the defendant.
During the colloquy at the suppression hearing, the hearing court indicated that the “main cases” it was interested in were People v Gursey (22 NY2d 224 [1968]) and People v Garofolo (46 NY2d 592 [1979]). In response to an argument raised by the prosecutor that “it would [have been] impossible for anyone to run out and cut the test off, tell [the defendant] to stop providing a sample,” the court stated that the People failed to adduce any testimony to establish that alleged fact. The court also stated that “[t]here was a denial of access to [sic] the lawyer to his client by the police department. That is proven beyond a reasonable doubt.” In an order dated July 29, 2011, the hearing court granted that branch of the defendant’s omnibus motion which was to suppress the results of the chemical breath test. The People appeal (see CPL 450.20, 450.50).[1]
On appeal, the People assert that the branch of the defendant’s omnibus motion which was to suppress the results of the chemical breath test should have been denied because the defendant failed to invoke her limited right to counsel prior to consenting to the chemical breath test. The People argue that a defendant’s attorney cannot direct that tests should not be administered unless the client confirms the directive. The *8 People also contend that the defendant failed to establish that her counsel actually requested to speak with her when he called the police prior to the administration of the test. The People further argue that Mayol’s 3:31 a.m. call was too late to stop the test, which was commenced at 3:39 a.m. when the defendant's breath was drawn.
“Chemical breath tests to determine blood alcohol content . . . are an important investigative tool used by law enforcement in the effort to combat driving while intoxicated and related offenses” (People v Smith, 18 NY3d 544, 548 [2012]). “Any person who operates a motor vehicle in this state shall be deemed to have given consent” to, among other things, a chemical breath test to determine the alcoholic content of their blood, within certain time limits after being arrested for driving under the influence of alcohol (Vehicle and Traffic Law § 1194 [2] [a]). Vehicle and Traffic Law § 1194 sets forth the standards governing the administration of chemical breath tests, and provides that if a motorist refuses a test the motorist’s driver’s license will be immediately suspended and thereafter revoked for one year. A motorist’s failure to submit to a chemical test is admissible as evidence at trial (see Vehicle and Traffic Law § 1194 [2] [f]). “[T]o maximize the probative value of BAG evidence, the police endeavor to administer chemical tests as close in time as possible to the motor vehicle infraction, typically within two hours of an arrest” (People v Smith, 18 NY3d at 548).
Notably, a motorist does not have a constitutional right to refuse to consent to a chemical breath test (see People v Smith, 18 NY3d at 548; People v Shaw, 72 NY2d 1032 [1988]; People v Thomas, 46 NY2d 100, 108 [1978], appeal dismissed 444 US 891 [1979]). Moreover, the statutory right to refuse a test may be waived without an attorney’s assistance (see Vehicle and Traffic Law § 1194 [2]; People v Shaw, 72 NY2d at 1033). Further, “Vehicle and Traffic Law § 1194 does not address whether a motorist has a right to consult with a lawyer prior to determining whether to consent to chemical testing” (People v Smith, 18 NY3d at 549). Nevertheless, if a motorist is arrested for driving while intoxicated, the Court of Appeals has recognized “a limited right to counsel associated with the criminal proceeding” (id.).
Possessing a “limited right to counsel” means that where a defendant is arrested for driving while under the influence of alcohol and asks to contact an attorney before responding to a request to take a chemical test, the police “may not, without
*9 justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand” (People v Gursey, 22 NY2d 224, 227 [1968]). If such a request is made, and it is feasible for the police to allow a defendant to attempt to reach counsel without unduly delaying administration of the chemical test, a defendant should be afforded such an opportunity. The request to speak with an attorney must be specific; generalized requests for an attorney are insufficient to invoke the limited or qualified right (see People v Curkendall, 12 AD3d 710, 715 [2004]; People v Hart, 191 AD2d 991 [1993]; cf. People v DePonceau, 275 AD2d 994 [2000]). Furthermore, the right to consult with an attorney is not absolute. “If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel” (People v Gursey, 22 NY2d at 229; see People v Smith, 18 NY3d at 550). Where there has been a violation of the limited right to counsel recognized in Gursey, any resulting evidence may be suppressed at the subsequent criminal trial (see People v Smith, 18 NY3d at 550).
Applying these principles here, as the People correctly contend, there is no evidence in the record that the defendant personally requested to speak to an attorney prior to submitting to the breath test, and thus the limited right to counsel, first recognized in Gursey, was not triggered or violated (cf. People v Mora-Hernandez, 77 AD3d 531, 531 [2010] [suppressing results of breath test where “(p)olice ignored defendant’s repeated requests for counsel prior to the administration of the test”]). The defendant concedes that she did not personally invoke the limited right to counsel by requesting to speak with counsel prior to the completion of the chemical breath test.
Turning from the limited right to counsel, we now consider whether, under the circumstances of this case, the defendant’s state constitutional right to counsel attached prior to the administration of the chemical breath test. “New York has long viewed the right to counsel as a cherished and valuable protection that must be guarded with the utmost vigilance” (People v Lopez, 16 NY3d 375, 380 [2011]). “The indelible right to counsel arises from the provision of the State Constitution that guarantees due process of law, the right to effective assistance of counsel and the privilege against compulsory self- *10 incrimination” (People v Grice, 100 NY2d 318, 320 [2003]; see NY Const, art I, § 6; People v Bing, 76 NY2d 331, 338-339 [1990]; People v Hobson, 39 NY2d 479, 481 [1976]). The right to counsel attaches indelibly (1) upon the commencement of formal proceedings (see People v Samuels, 49 NY2d 218, 221 [1980]; People v Settles, 46 NY2d 154 [1978]), or (2) when a suspect in custody requests to speak to an attorney, or when an attorney who is retained to represent the suspect enters the matter under investigation (see People v Cunningham, 49 NY2d 203, 205 [1980]; People v Rogers, 48 NY2d 167 [1979]; People v Hobson, 39 NY2d 479 [1976]; People v Arthur, 22 NY2d 325 [1968]; see also People v Grice, 100 NY2d at 320-321 [discussing the right to counsel under the State Constitution]; People v West, 81 NY2d 370, 373-374 [1993]).
“[0]nce the police have been apprised that a lawyer has undertaken to represent a defendant in custody in connection with criminal charges under investigation, the person so held may not validly waive the assistance of counsel except in the presence of the lawyer” (People v Garofolo, 46 NY2d 592, 599 [1979]; see People v Grice, 100 NY2d at 320-321 [the right to counsel is indelible because once it attaches, interrogation is prohibited unless the right is waived in the presence of counsel]; People v Arthur, 22 NY2d 325, 329 [1968] [“once the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant” the indelible right to counsel attaches regardless of the lack of a formal retainer agreement]; People v Gunner, 15 NY2d 226, 231-232 [1965]; People v Harris, 93 AD3d 58, 66 [2012]).
For example, in People v Garofolo (46 NY2d 592 [1979]), the defendant, a suspect in a homicide, waived his right to remain silent and made inculpatory statements to the police. Before the defendant’s statements had been reduced to writing, the defendant’s counsel had made repeated efforts to locate and speak with his client (see id. at 600-601). Defense counsel’s efforts to locate the defendant were unsuccessful because, at the time, there was “no central pool of information of persons in the custody of the police department” (id. at 598). It took almost two hours for counsel to ascertain the defendant’s whereabouts; at that point the defendant had already provided the police with a written confession (see id. at 598).
The Court of Appeals in Garofolo held that the police were required “to establish and maintain procedures which will *11 insure that an attorney representing [a person in custody] may communicate with him and with the officials responsible for the investigation, without unreasonable delay” (id. at 600, citing People v Pinzon, 44 NY2d 458, 464 [1978]). The Court held that inadequate police procedures to track a person in custody, which delay communication between an attorney and client, violate the right to counsel guaranteed under the Federal and State Constitutions (see People v Garofolo, 46 NY2d at 596, 599). Thus, Garofolo allows for the suppression of a defendant’s statements made after counsel enters a case, even where the police make good faith efforts to locate the defendant who is in their custody but are unable to do so (see id. at 600-601).
Here, the evidence adduced at the suppression hearing demonstrates that the defendant was in custody once she was arrested and transported to the police precinct (see People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970] [a suspect is deemed to be in custody when, a reasonable person, innocent of any crime, would not have believed she was free to leave the presence of the police]). Furthermore, the defendant’s counsel appeared and actually entered the case at 3:31 a.m., when he informed the police that he represented the defendant. Thus, the defendant’s indelible right to counsel attached at that point (see People v Grice, 100 NY2d at 324; People v West, 81 NY2d at 373-374), and any subsequent statements that the defendant may have made were rendered inadmissible at trial (see People v Garofolo, 46 NY2d at 599; People v Pinzón, 44 NY2d 458 [1978]). However, the evidence which the defendant sought to suppress was the result of the chemical breath test, not a statement.
The defendant advances the contention that once her attorney appeared in the case and instructed the police not to perform the chemical breath test, it was incumbent upon the People to inform her of counsel’s instructions and to allow her to consult with counsel. The defendant argues that the People did not submit any evidence at the suppression hearing demonstrating that there was insufficient time to permit her to speak with counsel, and that this failure constituted a deprivation of her right to counsel.
The defendant’s contentions are analogous to arguments considered by our courts in cases where individuals have sought to apply the rules relating to the state constitutional right to *12 counsel[2] to suppress the results of investigatory lineups (see e.g. People v Mitchell, 2 NY3d 272, 274-275 [2004] [“Once the right to counsel has been triggered, the police may not proceed with the lineup without at least apprising the defendant’s lawyer of the situation and affording the lawyer a reasonable opportunity to appear”]; People v LaClere, 76 NY2d 670 [1990] [finding that the results of investigatory lineups should be suppressed where the lineups occurred after the defendants’ right to counsel had attached and where the lineups were conducted without notice to counsel or a recognized excuse for counsel’s absence]; People v Coates, 74 NY2d 244 [1989]; People v Hawkins, 55 NY2d 474 [1982]; People v Blake, 35 NY2d 331 [1974]). In those cases, the Court of Appeals has determined that suspects are not entitled to counsel at pre-accusatory, investigatory lineups, but once the right to counsel has attached, that right requires the police to notify defense counsel of an impending investigatory lineup and afford counsel a reasonable opportunity to attend (see People v LaClere, 76 NY2d at 672-673).
At an investigatory lineup, defense counsel’s role is limited to being a passive observer; counsel may not actively participate in the procedure (see People v Hawkins, 55 NY2d at 485 [during an investigatory lineup, defense counsel plays the “relatively passive role of an observer”]). However, the role of defense counsel prior to the administration of a chemical breath test is not so passive. A defendant has a right to consult with counsel. Defense counsel serves as an advisor to a defendant as to whether a defendant ought to consent to the administration of such a test and the consequences of a consent or refusal.
The facts of this case can be contrasted with those confronted by the Appellate Division, Fourth Department, in People v Pfahler (179 AD2d 1062 [1992]) and by the Appellate Term, First Department, in People v Meytin (30 Misc 3d 128[A], 2010 NY Slip Op 52276[U] [2010]).
In Pfahler, the Fourth Department held that the defendant’s limited or qualified right to counsel was not violated:
“When defendant’s attorney called the hospital and was informed that defendant was about to have a *13 blood test, the attorney did not ask to speak to defendant and did not object to the blood test. The uncontroverted hearing evidence establishes that defendant was told that his counsel had called before he submitted to the test. Inasmuch as defendant’s only right in this context is the right to consult with counsel before deciding whether to submit to the test, there was no denial of defendant’s right to counsel” (People v Pfahler, 179 AD2d at 1062 [emphasis added]).
Like the case at bar, defense counsel in Pfahler called and made contact with the police prior to the administration of a chemical breath test. However, Pfahler is distinguishable on two grounds: the attorney in that case did not object to the test and, critically, the defendant was told that his attorney had called before he willingly submitted to the test.
In Meytin, the defendant moved to suppress the results of an intoxilyzer test. The evidence adduced at the suppression hearing showed that, prior to administering the test, defense counsel stated that the defendant should not be “dealt with or questioned” (People v Meytin, 30 Misc 3d 128[A], 2010 NY Slip Op 52276[U], *1 [2010]). Thereafter, the police informed the defendant that an attorney had called the police and stated that he was the defendant’s attorney. However, the defendant did not request to speak with his attorney about whether he should consent to the sobriety tests and, therefore, it was determined that the defendant waived any qualified right to counsel. The order denying suppression was affirmed. Here, unlike in Meytin, the record is clear that the police did not inform the defendant that her attorney had appeared. Hence, we do not know whether the defendant here would have withdrawn her consent after consulting with her attorney.
The sui generis nature of this case requires us to examine the gap between Gursey and Garofolo. To that end, we are asked to consider whether, as the defendant contends, the New York Constitution must be interpreted so as to obligate the police to: inform a motorist in custody that an attorney has appeared in thé matter on his or her behalf; inform a motorist that an attorney has requested that the motorist not be subjected to chemical testing; or make efforts to allow counsel to consult with a motorist prior to the commencement of such a chemical test. In addressing these contentions, this Court must balance the defendant’s state constitutional right to counsel against the *14 time-sensitive need to conduct the chemical breath test. “Our right to counsel jurisprudence has continuously evolved with the ultimate goal of ‘achieving a balance between the competing interests of society in the protection of cherished individual rights, on the one hand, and in effective law enforcement and investigation of crime, on the other’ ” (People v Grice, 100 NY2d at 322-323, quoting People v Waterman, 9 NY2d 561, 564 [1961]).
It is well settled that when the police are aware that a suspect has counsel, the suspect’s “right or access” to counsel cannot be deprived (People v LaClere, 76 NY2d at 674; see People v Blake, 35 NY2d at 338). The principles which underlie the indelible right to counsel — due process of law, the right to effective assistance of counsel, and the privilege against compulsory self-incrimination (see NY Const, art I, § 6; People v Grice, 100 NY2d at 320) — demand that the state constitutional right to counsel be interpreted so as to protect the rights of the defendant. Thus, we hold that when the police are aware that an attorney has appeared in a case where a motorist has consented to a chemical breath test, the police are obligated to exercise reasonable efforts to inform the motorist of counsel’s appearance if such notification will not substantially interfere with the timely administration of the test.[3] While we decline the defendant’s request to hold that the police must act as an intermediary for a motorist by relaying messages from an attorney to a client, safeguarding the right to counsel requires a reasonable effort to provide notification of counsel’s appearance. Once a motorist is so notified, that individual is free to, among other things, request to speak with counsel, refuse a test, or retract a consent to submit to a test. Where there is no evidence that the police made any efforts to notify a motorist that counsel has appeared in the matter, we must presume that a motorist would have requested to speak with counsel and would have withdrawn her consent to submit to a chemical breath test.
Applying this standard to the facts at issue here, the evidence shows that during Mayol’s initial phone call to the police precinct, he spoke to a police officer. This individual would have been expected to provide the hearing court with testimony as to the feasibility of informing the defendant, prior to the commencement of the chemical breath test, that her attorney had *15 appeared in the action. The witness could have testified, for example, that the defendant was nearby, or that it would have been difficult to reach the defendant when Mayol called, or that the chemical breath test had commenced and could not be halted. However, that individual did not testify and the People’s failure to call that witness was crucial. As discussed below, due to the vagueness in their proof, the People failed to satisfy their burden of going forward to show the legality of the police conduct in the first instance (see People v Berrios, 28 NY2d 361, 367 [1971]).
The record demonstrates that at 3:31 a.m., Mayol notified the police over the telephone that he represented the defendant. This phone call was made prior to the commencement of the chemical breath test (i.e., when the defendant’s breath was drawn at 3:39 a.m.). However, the record is barren as to whether the People made any efforts to inform the defendant that her counsel had appeared in the case. The defendant’s right to counsel was compromised inasmuch as the People were aware that the defendant’s counsel had called, but the People failed to adduce any evidence to show that it was not reasonable to notify the defendant that her attorney had appeared. Therefore, we hold that the People’s failure to so notify the defendant mandates the suppression of the chemical breath test results, since that test was commenced after defense counsel appeared in the case.
In view of the People’s failure to produce the appropriate witness at the hearing, we need not reach the issue of whether the police are required to interrupt an ongoing chemical breath test when a motorist’s attorney has appeared in a matter.
We note that in cases such as this which involve death or serious physical injury to a person other than the driver, the police may obtain a court order compelling a chemical test of a driver who refuses to submit to a test (see Vehicle and Traffic Law § 1194 [3]; see also People v Whelan, 165 AD2d 313 [1991]). This option, however, does not warrant a different result in this case. Law enforcement’s ability to compel the defendant to submit to a breath test will not sanction the deprivation of the defendant’s right to counsel under the State Constitution. Stated differently, the mere fact that a motorist is alleged to have committed a more serious crime does not mean that such an individual is entitled to a lesser, or greater, right to counsel.
Our dissenting colleague posits that once a motorist has agreed to submit to a chemical breath test, that consent cannot *16 be withdrawn. The dissent equates a consent to undergo a chemical breath test with a waiver which essentially cannot be withdrawn once the proverbial horse is out of the barn. We disagree with the dissent’s view. We see no reason why a motorist, in the circumstances of this case, cannot elect to withdraw a previously given consent to submit to a chemical breath test prior to its administration. Here, the chemical breath test had not yet been commenced before Mayol entered the case and, had the defendant been notified of counsel’s appearance, she could have elected to withdraw her consent and deal with the consequences that flowed therefrom. The dissent’s thesis would eliminate a motorist’s right to counsel after a consent is initially given, but prior to the commencement of a chemical breath test. This would render counsel’s appearance a nullity as well as prohibiting a motorist from retracting her consent prior to the commencement of a chemical test. Our learned dissenting colleague’s analysis only survives scrutiny if a consent to a chemical test is irrevocable even prior to the commencement of such a test. We do not think that the law deems consents to be irrevocable prior to the actual commencement of the test.
Our dissenting colleague also notes that if this were a matter involving a defendant’s uncounseled waiver of her privilege against self-incrimination, the evidence obtained from a defendant pursuant to a knowing waiver of that constitutional right, prior to counsel’s entry in the matter, would not be subject to suppression (see People v Garofolo, 46 NY2d at 601-602). However, the evidence sought to be suppressed here is not the defendant’s consent to submit to the test, which was given prior to counsel’s appearance in the case, but rather the results of the chemical breath test which were obtained after counsel’s appearance, and following the police’s unexplained failure to notify the defendant of counsel’s appearance.
We are cognizant that our holding here constitutes an extension of the principles set forth in Pinzón and Garofolo and their progeny insofar as we affirm the order granting suppression of the chemical breath test results on the ground that the defendant’s state constitutional right to counsel was violated. Nevertheless, “[i]n this State, the right of a criminal defendant to interpose an attorney between himself and the sometimes awesome power of the sovereign has long been a cherished principle” (People v Settles, 46 NY2d at 160). Indeed, the “ ‘highest degree of [judicial] vigilance’ is required to ‘safeguard’ ” the state right to counsel (People v Harris, 77 NY2d 434, 439 [1991], quoting People v Cunningham, 49 NY2d 203, 207 [1980]).
*17 Accordingly, the order is affirmed.

. The People have filed a statement with this Court pursuant to CPL 450.50 asserting that the deprivation of the use of the suopressed evidence has rendered the sum of the proof available to the People with respect to all the charges in the indictment “so weak in its entirety that any reasonable possibility of prosecuting such charge to a conviction has been effectively destroyed.”

. The courts of this state have, on several occasions, afforded criminal defendants greater protections of counsel under the State Constitution as compared to the rights afforded under the United States Constitution (see e.g. People v Hawkins, 55 NY2d 474, 483 [1982], cert denied 459 US 846 [1982]; People v Settles, 46 NY2d at 161).

. Just as it is important to conduct an investigatory lineup as close in time to the relevant circumstance as possible (see People v Hawkins, 55 NY2d at 486), promptness is equally important to the police with respect to the administration of chemical breath tests (see People v Smith, 18 NY3d at 548).