People v Zahangir (2021 NY Slip Op 51157(U))

[*1]

People v Zahangir (Tobin)

2021 NY Slip Op 51157(U) [73 Misc 3d 138(A)]

Decided on November 18, 2021

Appellate Term, Second Department

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on November 18, 2021
SUPREME COURT, APPELLATE TERM, SECOND
DEPARTMENT, 9th and 10th JUDICIAL DISTRICTS
PRESENT: : TERRY JANE RUDERMAN, P.J., ELIZABETH H. EMERSON, HELEN
VOUTSINAS, JJ

2020-434 OR CR

The People of the State of New York,
Respondent,
against
Tobin Zahangir, Appellant. 

John R. Lewis, for appellant.
Orange County District Attorney (Andrew R. Kass of counsel), for respondent.

Appeal from judgments of the City Court of Newburgh, Orange County (E. Loren Williams,
J.), rendered February 13, 2020. The judgments convicted defendant, upon jury verdicts, of
driving while intoxicated per se, common-law driving while intoxicated, and disobeying a traffic
control device, respectively, and imposed sentences.

ORDERED that the judgments of conviction are reversed, on the law, and the matters are
remitted to the City Court for a new trial. 
In May 2019, defendant was issued several simplified traffic informations, including ones
charging defendant with driving while intoxicated per se (Vehicle and Traffic Law § 1192
[2]), common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), and
disobeying a traffic control device (Vehicle and Traffic Law § 1110 [a]). Following a jury
trial, defendant was convicted of the three aforementioned charges, and sentences were imposed.
The sole contention defendant raises on appeal is that his constitutional and statutory rights to
counsel were violated because the City Court denied his request for assigned counsel. 
A review of the record indicates that, when defendant was arraigned on July 1, 2019, he
[*2]was not represented by counsel and the case was adjourned
numerous times so that he could obtain counsel. In August 2019, defendant informed the City
Court that he wanted a "public defender" and, later that same day, a Legal Aid attorney appeared
on behalf of defendant. In September 2019, the court informed defendant that it had received a
letter from Legal Aid stating that defendant was not financially eligible for Legal Aid services.
The court then asked defendant if he was going to hire an attorney or represent himself.
Defendant replied that he would hire an attorney, and the case was adjourned. On October 17,
2019, the court asked defendant if he had contacted an attorney and defendant replied that he
could not afford an attorney. The court then asked defendant if he worked, and defendant replied,
"Yeah . . . I work part time. I don't make that much." Defendant also informed the court that he
lived with his parents and that his father had been laid off from his job. The court stated that it
had provided defendant with "a number of chances to hire an attorney" and that defendant did not
qualify for assigned counsel or Legal Aid. The case was adjourned for hearings and/or trial. 
Thereafter, in court on October 30, 2019, defendant again informed the City Court that he
could not afford to hire an attorney. The court asked defendant if he was working, defendant
replied, "part time." The court asked defendant if he lived with his parents and defendant replied
that he did. When asked if his parents owned their home, defendant replied yes and that they had
a mortgage. The court stated that "It doesn't look like you qualify. Do you have any children?"
Defendant said that he did not have any children and that he had been helping out his parents, as
his father had been suspended from his job. In reply to a question from the court, defendant
stated that he had a loan on his car. The court stated, "You own your car. You know, I can't sit
down and go through your finances with you. It's been more than four months here. I have been
giving you a lot of opportunities here to [hire] an attorney. Even if you made payments over those
four months, by this point you would have had enough to pay an attorney."
Prior to the start of trial in December 2019, the City Court stated that defendant had
informed the court that he wanted to represent himself and have a jury trial. Defendant responded
that he wanted a lawyer and that he had not hired a lawyer because he did not have the money.
The court told defendant that he was financially ineligible for an attorney and, again, asked
defendant if he was working. Defendant replied that he worked part time and stated, "I don't
make enough to pay for a lawyer." 
It is well settled that the New York State Constitution "guarantees due process of law, the
right to effective assistance of counsel and the privilege against compulsory self-incrimination"
(People v Grice, 100 NY2d 318, 320 [2003]). The right to counsel in New York "extends
well beyond the right to counsel afforded by the Sixth Amendment of the United States
Constitution and other State Constitutions" (People v Davis, 75 NY2d 517, 521 [1990]).
In the case at bar, after Legal Aid informed the City Court that defendant was financially
ineligible for its services, and defendant repeatedly informed the court that he could not afford to
hire an attorney, the court "had an obligation to inquire further into defendant's eligibility and
desire for the appointment of counsel" (People v McKiernan, 84 NY2d 915, 916 [1994]).

Although the City Court asked defendant where, and with whom, he lived, whether his
parents owned a house, whether defendant owned a vehicle, as well as whether defendant
worked, the questions it posed did not make a sufficient inquiry into defendant's ability to hire an
attorney, as no specific financial information was asked for, or provided. The fact that a
defendant owns a car or lives with his parents in a house his parents own, does not, in and of
itself, mean that defendant can afford to hire an attorney. The limited questioning by the court
was inadequate, as it appears that the court based its determination predominantly on Legal Aid's
determination that defendant did not financially qualify for its services.
Accordingly, the judgments of conviction are reversed and the matters are remitted to the
City Court for a new trial.
RUDERMAN, P.J., EMERSON and VOUTSINAS, JJ., concur.

ENTER:
Paul Kenny
Chief Clerk
Decision Date: November 18, 2021